[Civ. No. 9631. First Appellate District, Division One.—May 29, 1935.]

SPRING VALLEY COMPANY, LTD. (a Corporation), Appellant, v. CHARLES G. JOHNSON, State Treasurer, etc., Respondent.

Theodore J. Savage and Eliot G. Stoutenburgh for Appellant.

U. S. Webb, Attorney-General, and H. H. Linney, Deputy Attorney-General, for Respondent.

DOOLING, J., *pro tem.*—This is an appeal from a judgment entered after sustaining a demurrer to plaintiff's complaint. The action was brought by appellant, Spring Valley. Company, Ltd., against the State Treasurer to recover taxes paid under protest for the year 1931.

From the complaint it appears that prior to March 3, 1930, appellant for many years was engaged in supplying water as a water utility corporation to the inhabitants of San Francisco, and on that date it transferred the whole of its water system to the city and county of San Francisco and retired from the water utility business, but that it retained and still owns certain lands not necessary or useful in such water utility business, but which it had been compelled to acquire from time to time in order to acquire certain other contiguous lands necessary and useful in such business; that from January 1, 1930, to March 3, 1930, appellant derived a net income from its water utility business of $448,512.81, but since that time it has not derived and can no longer derive any income from the distribution of water; that since March 3, 1930, appellant's sole business has been the holding, conservation, administration, investment and reinvestment of said nonoperative assets, and that instead of a net income appellant suffered a net loss in 1931 of $43,539.54; that despite these facts the franchise tax commissioner assessed a tax upon appellant for 1931 based upon appellant's net earnings in 1930, including the $448,512.81 derived from its water business between January 1 and March 3, 1930, which tax appellant paid under protest and herein seeks to recover.

It is appellant's first contention that section 4 of the Bank and Corporation Franchise Tax Act of 1929 (Stats. 1929, p. 19) is unconstitutional in so far as it purports to authorize a tax upon a corporation "upon the basis of its net income for the next preceding fiscal or calendar year". This argument is pointed to subdivision 2 (a), section 16,

article XIII, of the Constitution of the state as adopted November 6, 1928, which reads: "All financial, mercantile, manufacturing and business corporations doing business within the limits of this State, subject to be taxed pursuant to subdivision (d) of section 14 of this article, in lieu of the tax thereby provided for, shall annually pay to the State for the privilege of exercising their corporate franchises within this State a tax according to or measured by their net income. The amount of such State tax shall be equivalent to four per cent of their net income."

Appellant argues that this constitutional provision can bear but one construction, and that is that the net income by which the tax is to be measured must be the net income earned in the year for which the tax is collected, and that the legislative provision attempting to measure it by the net income of the preceding year is therefore not authorized by and in conflict with the constitutional provision under which it was adopted. To the support of this argument it brings first the rule that taxing statutes are to be strictly construed against the state (*Estate of Potter*, 188 Cal. 55 [204 Pac. 826]) ; second, the definition of "net income" as gross income actually received less expenses, and not earnings not yet received and which may never be received (*Mutual Benefit Life Ins. Co.* v. *Herold*, 198 Fed. 199; *Brown* v. *Long*, 242 Mass. 242 [136 N. E. 188] ; *People* v. *San Francisco Savings Union*, 72 Cal. 199 [13 Pac. 498]), from which it is argued that net income must mean precisely the net income of the year for which the corporation is taxed; third, that it is inherently unjust to base a franchise tax for one year, when nothing may be earned, on the earnings of the previous year.

To all of these arguments a ready answer may be found in the provisions of the Constitution itself. Subdivision 5 of section 16, article XIII, of the Constitution, adopted at the same time as subdivision 2 (a) thereof, provides in part: "Said taxes shall become a lien on the first Monday in March of 1929 and of each year thereafter. The legislature shall pass laws necessary to carry out this section. The acts of the forty-eighth session of the legislature passed pursuant to this section shall be effective immediately upon their passage."

Placing the construction contended for by appellant upon subdivision 2 (a) of section 16 would necessarily postpone the

levy of the tax for the year 1929 to some time in 1930, because the net income for 1929 could not be known or ascertained until the year was completed. Why, then, the provision for the tax to become a lien in March, 1929? And what the necessity for the provision putting into immediate effect the acts of the forty-eighth session of the legislature passed pursuant to the constitutional provisions? ■ Taking section 16, article XIII, as a whole, it seems clearly to contemplate a tax to be levied and collected in 1929, and this would only be possible if the net income of the previous year was used as its basis. This construction is reinforced by the practical consideration that if the levy and collection of these taxes was to be postponed to 1930, the state would derive no revenue from this source during the entire year of 1929. In substituting one form of taxation upon corporate franchises for another we should not hold that the people intended to postpone all collections of such taxes for an entire year unless the intention to provide such a tax hiatus was clearly and unmistakably expressed.

■ These conclusions are supported by the rule that the legislative construction of a constitutional provision which may be open to two constructions is controlling on the courts (*San Francisco* v. *Industrial Acc. Com.*, 183 Cal. 273, 279 [191 Pac. 26] ; *Pacific Indemnity Co.* v. *Industrial Acc. Com.*, 215 Cal. 461, 464 [11 Pac. (2d) 1, 82 A. L. R. 1170]), a rule which is equally applicable to a taxing statute (*People* v. *Southern Pacific Co.*, 209 Cal. 578, 593, 594 [290 Pac. 25] ),
■ and by the rule frequently announced by the Supreme Court of the United States that it is constitutionally proper to base a tax for one year on the income of the next preceding year. (*People* v. *Jersawit,* 263 U. S. 493 [44 Sup. Ct. 167, 68 L. Ed. 405] ; *Brushaber* v. *Union Pac. R. R. Co.*, 240 U. S. 1 [36 Sup. Ct. 236, 60 L. Ed. 493] ; *Maine* v. *Grand Trunk Ry. Co.*, 142 U. S. 217 [12 Sup. Ct. 163, 35 L. Ed. 994].)

■ In 1931, section 13 of the Bank and Corporation Franchise Tax Act was amended to provide (Stats. 1931, p. 65) : "If any bank or corporation discontinues actual operations within the State in any year and thereafter has no net income but does not dissolve or withdraw from the State, it shall in the succeeding year and thereafter until

dissolution, withdrawal or resumption of operations, pay an annual tax to the State of twenty-five dollars.''

If appellant comes within the provisions of this section it would seem entitled to invoke them, although the amendment did not go into effect until February 27, 1931. (*Fullerton Oil Co.* v. *Johnson*, 2 Cal. (2d) 162 [39 Pac. (2d) 796].) However, the provision is in the conjunctive. The corporation must discontinue operations in the state and have no net income for the year in order to come within its terms. Appellant had no net income for the year 1931, but according to the allegations of its complaint, while it went out of the water business ''since March 3rd, 1930, the sole business of this company has been the holding, conservation, administration, investment and reinvestment of said non-operative assets of the corporation''. A corporation so engaged cannot be held to have discontinued actual operations within the state.

Judgment affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 28, 1935, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 25, 1935.