[Civ. No. 21726.   Second Dist., Div. Two.   Oct. 11, 1956.]

TITLE INSURANCE AND TRUST COMPANY (a Corporation), Appellant, v. FRANCHISE TAX BOARD, Respondent.

Thompson, Royston, Wiener & Moss for Appellant.

Edmund G. Brown, Attorney General, James E. Sabine, Assistant Attorney General, Dan Kaufmann and James C. Maupin, Deputy Attorneys General, for Respondent.

MOORE, P. J.—Appellant filed its action in two counts: One was to recover the franchise tax as to its trust business paid for the year 1943; Two was to recover interest on the franchise tax paid for 1942 but refunded by order of the Franchise Tax Board May 31, 1950. Both demands were rejected. Appellant brought the matter here, contending (1) that it was not, in 1943, subject to the tax imposed by the former Bank and Corporation Franchise Tax Act for the calendar year 1943 by reason of the contents of section 14⅘ of article XIII of the California Constitution; (2) that it is entitled to interest on the franchise tax paid for the taxable calendar year 1942 under section 27(c) of the former Bank and Corporation Franchise Tax Act[*] as that section read in 1942 because the overpayment of the tax did not result from an error or mistake on the part of appellant. The Franchise Tax Act will hereafter be referred to as the Act.

The answer to the question as to whether appellant was obliged to pay a tax under the Act for the privilege of oper-

[*]Such Act has been supplanted by the Bank and Corporation Tax Law, division 2, part III of the Revenue and Taxation Code.

ating its trust business in the calendar year 1943, depends upon the interpretation of section 14⅘† which was adopted November 3, 1942, and is in part copied on the margin hereof.

█ Section 14⅘ is by its own contents self-executing Without legislative aid, it emphatically subjects the trust business of appellant to taxation for 1943. Its title insurance business had long been subjected to an annual tax under subdivision (b) of section 14¾ of article XIII "upon the . . . gross premiums, less return premiums, received upon its business

---

†California Constitution, article XIII:

"Sec. 14 4/5. (a) Those provisions of Section 14¾ of this article relating to taxation of insurance companies and associations shall remain effective as to business done in this State prior to January 1, 1943, and as to the assessment, levy, collection and adjustment of taxes with respect to such business done prior to that date; but as to such business done subsequent to December 31, 1942, those provisions of Section 14¾ relating to taxation of insurance companies and associations shall not apply, and this Section shall apply thereto.

"(b) 'Insurer,' as used in this section, includes insurance companies or associations and reciprocal or interinsurance exchanges. As used in this paragraph, 'companies' includes persons, partnerships, joint stock associations, companies and corporations.

"(c) An annual tax is hereby imposed on each insurer doing business in this State after December 31, 1942, on the bases, at the rates, and subject to the deductions from the tax hereinafter specified.

"(d) In the case of an insurer not transacting title insurance in this State, the 'basis of the annal tax' is, in respect to each year, the amount of gross premiums, less return premiums, received in such year by such insurer upon its business done in this State, other than premiums received for reinsurance and for ocean marine insurance.

"In the case of an insurer transacting title insurance in this State, the 'basis of the annual tax' is, in respect to each year, all income upon business done in this State, except:

"(1) Interest and dividends.

"(2) Rents from real property.

"(3) Profits from the sale or other disposition of investments.

"(4) Income from investments.

.   .   .   .   .   .   .   .   .   .   .   .

"In the case of an insurer transacting title insurance in this State which has a trust department and does a trust business under the banking laws of this State, there shall be excluded from the basis of the annual tax imposed by this section, the income of, and from the assets of, such trust department and such trust business, if such income is taxed by this State or included in the measure of any tax imposed by this State.

.   .   .   .   .   .   .   .   .   .   .   .

"(i) The tax imposed on insurers by this section is in lieu of all other taxes and licenses, State, county, and municipal, upon such insurers and their property, except:

.   .   .   .   .   .   .   .   .   .   .   .

"(2) That an insurer transacting title insurance in this State which has a trust department or does a trust business under the banking laws of this State is subject to taxation with respect to such trust department or trust business to the same extent and in the same manner as trust companies and the trust departments of banks doing business in this State."

done in this state, other than premiums received for reinsurance.'' But that method of computing the tax imposed upon the insurance business of title companies in 1942 underwent a change by the adoption of section 14⅘, and trust business was separately taxed. By subdivision (a) of that section, those provisions of section 14¾ relating to the taxation of insurance companies ''shall remain effective as to business done in this state prior to January 1, 1943, and as to the assessment, levy, collection and adjustment of taxes with respect to such business done prior to that date; *but as to such business done subsequent to December 31, 1942,* those provisions of section 14¾ relating to taxation of insurance companies . . . shall not apply and *this section shall apply thereto.''*

From the language just quoted, so far as appellant's insurance business is concerned, it was obliged to pay a tax for business done prior to January 1, 1943, based upon the amount of gross premiums received by it during the preceding twelve months. However, the adoption of section 14⅘ brought on a definite change in the method of computing the annual tax on its title insurance business. While subdivision (d) retained the same basis of the annual tax as to all insurance companies except title companies, that is to say an annual tax based upon the amount of gross premiums, yet that subdivision changed the annual tax with respect to the insurance business of title companies to a tax based upon their income derived from business done in California. But if an insurance company in this state transacts title insurance and also ''does a trust business under the banking laws of this State, there shall be excluded from the basis of the annual tax imposed by this section, the income of, and from the assets of, such trust department and such trust business, if such income is taxed by this State or included in the measure of any tax imposed by this State.''

It was clearly the purpose of the new section that the trust portion of the business done by such companies as appellant was not to be considered as insurance business and therefore should not be taxed as insurance business. Therefore, while section 14⅘ exempted the insurance companies and title companies from the great majority of taxes, it emphasized by subdivision (i) that the trust business done by title companies shall be taxed to the same extent and in the same manner as is that of any trust company or trust department of any bank operating in this state. From such reading of the new

section, it is apparent that title companies are not engaged in the same type of insurance as that of other insurers and should be taxed on a different basis, to wit, on their incomes rather than on their gross premiums. Inasmuch as the trust business of title companies was not exactly a part of their insurance activities, the new section was so phrased that the trust business of title companies shall be required to pay the same type tax as trust companies and banks doing a trust business are required to pay.

■ From the foregoing, the conclusion is unavoidable that after December 31, 1942, all insurance sold by a title company must pay an annual tax based upon the company's income, but its income from its trust department must be excluded from the basis of such tax. ■ As to the trust business done by a title company after December 31, 1942, it was subject to a franchise tax under the Bank and Corporation Franchise Tax Act, the same as that paid by other trust companies and trust departments of banks.

Appellant contends (1) that under section 14¾ by reason of the fact that its insurance tax is levied in lieu of all other state taxes, it was exempt from the payment of California bank and franchise tax; but (2) that under section 14⅘ it is subject to such tax measured by its trust department's net income; (3) that the levy of a franchise tax for 1943 measured by its income for 1942 was the assessment and levy of a tax with respect to business done prior to January 1, 1943; (4) thus the judgment of the superior court approving the levy of a tax measured by appellant's trust department income for 1942 applies section 14⅘ prematurely and contrary to the terms of the express, effective date provided by the section; namely, December 31, 1942.

■ Appellant's contention that the levy of a franchise tax on trust business for 1943 measured by the income of its trust business in 1942 is, in effect, a tax upon its 1942 trust business in violation of the effective date of section 14⅘ is not justified by an analysis of that section. Section 14⅘ expressly provided for taxation of 1943 trust business. The franchise tax here levied was for the privilege of doing business in 1943 regardless of the fact that a prior year's earnings constituted the measuring rod of the amount of the tax. A tax for the privilege of doing business within the state is no less a tax upon this year's privilege because measured by last year's income. Is not success in the recent past the best criterion for measuring the value of doing business now? Since the formula

prescribed by the Legislature for deriving the taxes due by a trust company furnishes an approximation of the amount accrued and since there appears no abuse of power by the legislation, it will not be disturbed. (See *Fullerton Oil Co.* v. *Johnson,* 2 Cal.2d 162, 175 [39 P.2d 796].)

We cannot agree that section 14 4/5 should be so construed as regards its effective date as to leave appellant not subject to tax for the privilege of conducting trust business in 1943. Should such construction prevail, the trust portion of appellant's business would be exempt for 1943 while its insurance business would be taxed for that year. Thus would result a hiatus in the law as to the taxation of the trust business of title companies which could not reasonably have been intended by the authors of section 14⅘ which contemplates that trust business would be taxed. Under appellant's construction of the amending section, the insurance business would be taxed for the year 1943 while its trust business would escape the drag of the tax gatherer. ██ ''In substituting one form of taxation upon corporate franchises for another we should not hold that the people intended to postpone all collections of such taxes for an entire year unless the intention to provide such a tax hiatus was clearly and unmistakably expressed.'' (*Spring Valley Co.* v. *Johnson,* 7 Cal.App.2d 258, 261 [46 P.2d 294] ; *Carpenter* v. *Peoples Mutual Life Ins. Co.,* 10 Cal.2d 299, 303 [74 P.2d 508].)

However, appellant argues that the task of this court of attempting to construe the effective date of section 14 4/5 has been preempted by the Legislature. The gist of the contention is that when the Legislature added sections 12253 and 12255 to the Revenue and Taxation Code by the Statutes of 1943, chapter 956, page 2832, and thereby codified the provisions of the constitutional section 14⅘, section 21 of chapter 956 provided that the effective date of these statutory sections was to be December 31, 1943. Thereby the inference is sought to be drawn that the Legislature construed section 14⅘ as not providing for franchise taxation of trust business carried on during 1943 as measured by 1942 receipts. This contention cannot prevail. In view of the fact that the provisions of section 14⅘ are clearly self-executing without legislative implementation, it is unnecessary to inquire into the intent of the Legislature in enacting the various provisions of the Revenue and Taxation Code. In the second place, the effective date contained in section 21 of chapter 956 applied to numerous

amendments to the code besides sections 12253 and 12255. It is therefore impossible to infer any legislative intent that these specific sections were to have the December 31, 1943, effective date because of a construction by that body of the constitutional provision. Furthermore, neither of these code sections provided for taxation of the trust business of title insurers. Rather they merely excluded receipts from such business from the income used to measure insurance taxation under the new method for computing such tax. ■ The fact that the Legislature set in motion the new method of taxing the insurance business of title companies as of December 31, 1943, does not serve as an indication of legislative intent to exempt trust business of such companies from taxation during the year 1943 in disregard of the clear effective date of the constitutional section; namely, December 31, 1942.

■ A final point put forward by appellant is that in June of 1943, the Legislature amended the Bank and Corporation Franchise Tax Act to provide that from thenceforth the franchise tax would be collected at the *close* of the business year rather than the beginning, thereby measuring the amount of the tax by the business of the current rather than the prior year. (Stats. 1943, ch. 984, § 4(7), p. 2899.) Thus, the argument runs that the first year whose income should be measured for taxation would be that of 1943 rather than 1942. In other words, that the first franchise tax applicable to appellant would by the terms of the amendment to the Act be due on the 31st of December, 1943, and be measured by the income earned from the trust business during that year. However, the fact that the Legislature changed the accrual date from the first day of the tax year to the last day of the income year does not affect appellant's liability. Nevertheless, appellant's duty to pay tax upon its 1943 trust business became fixed upon December 31, 1942. At that time, a franchise tax was imposed *due the first day of the year 1943 for the privilege of doing business in 1943.* The amendment to the Act could not have been effective as to the income year 1942 upon which the 1943 franchise tax was based because under the provisions of section 2 of chapter 984 of the Statutes of 1943 the amendment was only to be applicable to "income years ending after the effective date of this act." Therefore, the first income year to which the amendment would apply would be 1943 and not 1942. This provision was undoubtedly inserted so that taxation of income years would proceed in an unbroken chain regardless of the change in accrual dates.

### The Overpaid Franchise Tax for 1942

On March 15, 1942, appellant filed its franchise tax return for that year based upon 1941 income. The return disclosed a net income of $79,625.61 and assessed appellant's franchise tax at $3,197.02 which was paid with the return. Appellant and Franchise Tax Commissioner having waived the statute of limitations for the assessment of the franchise tax, the time for assessment was extended to December 1947. Thereupon, appellant filed its claim for a refund of the reported tax upon the ground that "The Bank and Corporation Franchise Tax is not applicable in any way to claimant for the period here involved for the reason that claimant was at all times mentioned herein an insurance company, subject to the California tax on insurance companies in lieu of all other taxes." The taxpayer then pursued its remedies through the appropriate tribunals and secured an order for the refund of the tax *but without interest*. The title company now demands interest at the rate of six per cent on the refunded amount as accrued from the date of its payment, March 15, 1942, to the date of refund, June 5, 1950.

The statute under which the claim is made is section 27(c) of the Bank and Corporation Franchise Tax Act as constituted in 1942, which read: "Interest shall be allowed and paid upon any overpayment of any tax, if the overpayment was not made because of an error or mistake on the part of the taxpayer." The admitted facts surrounding the payment of the tax are that in 1940 the attorney general of the State of California issued his opinion which advised the taxing authorities to collect a franchise tax from title insurers in the trust business regardless of the provisions of the section of the California Constitution which provided for a single tax upon insurance companies; the opinion was published in tax journals; and the taxing authorities indicated their intent to adopt the advice offered. Appellant relied upon these representations of intent and voluntarily self-assessed the tax. However, appellant must have had the intent at that time of seeking a refund of the tax because, regardless of the attorney general's opinion, the Board of Equalization had recently rendered a decision favorable to appellant's position. Considering these circumstances, the question is whether the payment was due to the "error or mistake" of the taxpayer.

A reading of the Bank and Corporation Franchise Tax Act as it was constituted in 1942 convinces us that appellant is

entitled to interest on the overpayment. That act provided a choice of two avenues to a taxpayer in the position of the appellant who felt it did not owe a tax *which the taxing authorities were avowedly intending to collect.* Section 25 (Stats. 1939, ch. 1050, p. 2962) authorized the taxpayer to protest the payment of the tax, obtain a hearing before the Franchise Tax Commissioner, and subsequently to appeal to the Board of Equalization. However, if the taxpayer there lost, section 24(c) would impose upon it interest on the deficiency at the rate of six per cent from the date when the tax was originally payable to the date when the deficiency was finally paid. (Stats. 1939, ch. 1050, p. 2962.) On the other hand, the taxpayer could proceed in the manner followed here; i.e., pay the tax and then claim a refund. In such event, the taxpayer would be entitled to the interest on the overpayment at the identical rate of six per cent. (Stats. 1939, ch. 1050, § 27c, p. 2966.) Quite obviously the taxpayer is not under a compulsion to choose either of the avenues provided. If it chooses to protest a tax the government attempts to collect, naturally the taxpayer should reimburse the government for its loss of use of the funds during the period of protest. On the other hand, if the government demands payment of funds which the taxpayer does not feel are due, the government should recompense the taxpayer for use of his funds for a period of time.

The provision in section 27(c) denying interest on overpayments due to error or mistake on the part of the taxpayer was designed to prevent abuse of the interest allowance. If six per cent happens to be a very good rate of return on an investment, naturally taxpayers may not be allowed to overpay at will and then collect profitable refunds. Thus, if appellant's attorneys had read court or board decisions, construed the statutes, and mistakenly determined themselves liable for franchise tax, they could expect no compensation for their error. ■ But where, as here, the taxing authority announces it is planning to require payment of certain sums, a taxpayer choosing to pay and seek refund has not made such a voluntary, erroneous payment as to deprive him of interest on the funds subsequently refunded.

The judgment is affirmed (Count I) insofar as it denied recovery of the franchise tax appellant paid on its trust business for 1943; it is reversed insofar as appellant is denied interest upon the refund of the 1942 franchise tax, and the

trial court is directed to enter judgment in favor of plaintiff on Count II in accordance with the views herein. Each party is to bear its own costs of appeal.

Fox, J., concurred.

Mr. Justice Ashburn did not participate in this decision.