[Civ. No. 49838. Second Dist., Div. Five. Sept. 20, 1977.]

WESTFIELD-PALOS VERDES COMPANY et al.,
Plaintiffs and Appellants, v.
CITY OF RANCHO PALOS VERDES et al.,
Defendants and Respondents.

488

**COUNSEL**

Latham & Watkins, Alan N. Halkett and Lance B. Wickman for Plaintiffs and Appellants.

Richards, Watson, Dreyfuss & Gershon, Glenn R. Watson and Mitchell E. Abbott for Defendants and Respondents.

## OPINION

**STEPHENS, J.**—Appellant land developers seek to avoid payment of Rancho Palos Verdes municipal taxes affecting their housing projects on the Palos Verdes peninsula. In the court below appellants sought to enjoin enforcement of these taxes and to obtain refunds of taxes already paid.[1] Respondent city moved for summary judgment. The court, concluding that there were no triable issues of fact, granted the city's motion, then entered judgment dismissing appellants' action. Appeal is taken from that dismissal.

On September 7, 1973, the City of Rancho Palos Verdes was incorporated. Prior to the city's birth, however, appellants Dayton Realty Company (Dayton), Westfield Development Company (Westfield), and Palos Verdes Penthouse, Limited (Penthouse) had acquired property, obtained the necessary governmental permits and approvals, and had commenced construction on their separate projects. The housing units in each of these projects were in varying stages of development when the city enacted its Environmental Excise Tax Ordinance (Ord. No. 14 U, § 6700 et seq.) on January 22, 1974, subsequently part of the Business License Tax Ordinance (Ord. No. 27, § 6400, enacted April 16, 1974). Dayton's Ridgegate-Mira Verde project covered 69 acres and involved the construction of 627 condominium units. Only 93 of those units had been sold by January 1974. Other units were nearing completion, but a good portion were still just bare foundations. The units sold were not included in Dayton's assessed taxes. Westfield's Tiara Del Mar project involved construction of single family homes on 48 finished lots. By January 1974, about half of these units were nearing completion, and 18 were in escrow. Construction was just commencing on the remainder of these units. Finally, the Penthouse project, consisting of two large condominium units on adjoining parcels of land, was only partially completed when the first tax ordinance was enacted.

The contested tax ordinances exact a fee from residential builders and developers in the amount of $500 per dwelling unit, to a maximum of $1,000. The environmental tax ordinance assesses such a "bedroom tax" as a special, nonrecurring tax upon "the occupation and construction of new dwelling unit[s]" as a method of "providing revenues with which the city may meet and deal with . . . the serious ecological and environmen-

---

[1]To date appellants have paid combined city taxes of approximately $500,000.

tal problems created by the occupancy and construction of such facilities within the City." This tax is determined at the time of the issuance of the building permit or certificate of occupancy and must be paid prior to the occupancy of the dwelling.[2] The Business License Tax Ordinance

[2]The Environmental Excise Tax Ordinance in pertinent part provides as follows:

"*Sec. 6700. Findings.* The City Council of the City of Rancho Palos Verdes hereby finds and determines that the development and construction of new residential living units and of new commercial or industrial structures within the City creates an immediate and present danger to the existing quality of life and ecology of the City, and threatens to contaminate and pollute the air, water and land within and surrounding the City, and threatens to burden and overtax existing public facilities of the City which provide public services, police and fire protection, public utilities, water, and treatment and disposal of sanitary sewage, which thus pose a direct threat and danger to the health, safety and general welfare of the City and its inhabitants, and their environment. The City Council further finds and determines that the imposition and collection of a special, non-recurring tax upon the occupancy and construction of new residential dwelling units and of new commercial and industrial buildings within the City is the most practical and equitable method of providing revenues with which the City may meet and deal with and solve the serious ecological and environmental problems created by the occupancy and construction of such facilities within the City. Further, the City Council finds that the number of bedrooms in a dwelling unit tends to be reasonably proportionate to the impact that the occupation of said unit will have on the environment of the City and on the quantity of municipal service required of the dwelling unit, and that the gross area of commercial or industrial buildings is a reasonable gauge of the impact of such buildings.

"*Sec. 6701. Definitions.* For the purpose of this article, the words defined in this section shall have the meaning assigned to them.

"DWELLING UNIT. 'Dwelling Unit' means and includes any dwelling designed for human occupancy, which has one or more rooms, with or without a kitchen or cooking facilities, except a 'hotel' as defined in Section 139.2 of the Los Angeles County Zoning Ordinance No. 1494.

"BEDROOM. 'Bedroom' means and includes any room in a dwelling unit which is determined by the City Engineer to be intended, designed or constructed so as to be suitable for use as a room to accommodate the sleeping needs of a resident or guest of a dwelling unit.

"*Sec. 6702. Imposition.* An environmental excise tax is hereby imposed upon the occupancy and construction of each new dwelling unit and each new commercial and industrial building within the City.

"*Sec. 6703. Rates.* The rate of the environmental excise tax hereby imposed is $500.00 per bedroom, to a maximum of $1,000.00 per dwelling unit for residential buildings and 30¢ per square foot of gross building area for new industrial and commercial buildings.

"*Sec. 6704. Determination and payment of tax.* The amount of tax due hereunder shall be determined either at the time of the issuance of the building permit for the building or at the time of the issuance of any certificate of occupancy for any dwelling unit requiring a certificate of occupancy, and the full amount of the tax shall be due and payable to the City of Rancho Palos Verdes prior to the occupancy of such dwelling unit or units, or industrial or commercial buildings.

"*Sec. 6705. Collection.* The City Engineer or his designee shall collect the tax due hereunder. The full amount due under this article shall constitute a debt to the City. An action for the collection thereof may be commenced in the name of the City in any court having jurisdiction of the cause.

"*Sec. 6706. Payment required before occupancy.* No certificate of occupancy shall be issued for, and no person shall occupy or offer for occupancy, any new dwelling unit or

assesses the same "bedroom tax" as the measure of the annual license tax due from a residential builder or developer. The dwelling units by which this tax is measured are those for which building permits or certificates of occupancy have been issued, or on which construction is in progress during the tax year. Excluded from such computations, however, are any units upon which the developer has paid an environmental excise tax. Effectively, the environmental excise tax operates as a form of business license tax with respect to residential builders and developers.[3]

---

new commercial or industrial building in the City unless the tax imposed upon the occupancy and construction thereof by this Chapter has been paid.

"*Sec. 6707. Disposition of proceeds; creation of environmental excise fund.* All proceeds from the tax collected under this article shall be paid into a special fund of the City to provide open space, improve the quality of life and the ecology of the City, or of any distressed or environmentally endangered portion thereof, and to fight pollution and contamination of the air, water and land within and surrounding the City, to be entitled the "environmental excise tax fund," which fund is hereby created. Said fund shall be used for the purposes of purchasing land, constructing buildings and improvements, and purchasing machinery, equipment and other capital type facilities with which the City may develop, improve, and expand public parks, public services, police and fire protection, public utilities, water, and the treatment and disposal of sanitary sewage. In expending said fund for said purposes, the City may act alone or may exercise its powers jointly with any other public entity to accomplish any of the foregoing purposes for the benefit of the whole, or any portion, of the City of Rancho Palos Verdes."

[3]The Business License Tax Ordinance in part provides:

"*6424.1 Classification "G". Residential Builders, Developers. (Annual)*

"Includes all persons engaged in the business of building, construction or development of new residential housing in the City, whether performed or accomplished in whole or in part by employees, contractors, subcontractors or others, whether for, or for the account of, the builder or developer or for others, for human occupancy, and whether for sale, rental, lease, or otherwise.

"Minimum tax $20.00 per year;
$500.00 per bedroom not to exceed a maximum of
$1,000.00 per dwelling unit constructed in the
City per year.

"Dwelling unit" shall mean and include any structure or dwelling designed for human occupancy as a place of abode, which has one or more rooms with or without a kitchen or cooking facilities, except a "hotel" as defined in Section 139.2 of the Los Angeles County Ordinance No. 1494, Zoning Ordinance. "Bedroom" shall mean and include any room in a dwelling unit which is determined by the City Engineer to be intended, designed or constructed so as to be suitable for use to accommodate the sleeping needs of a resident or guest of a dwelling unit.

"*6424.3 Computation of Tax*

"The amount of tax payable under the provisions of sub-sections 6424.1 and 6424.2 shall be measured by computing the number of bedrooms and dwelling units as provided in subsection 6424.1, and the number of square feet of commercial and industrial building as provided in subsection 6424.2, respectively, as follows:

"(a) If a building permit is issued during the year for such construction the number of bedrooms, dwelling units, and/or square feet of commercial or industrial construction, as the case may be, for which such permits are issued shall be included;

"(b) If a certificate of occupancy is issued during the year for any construction the

Appellants challenge these ordinances on several fronts. Their principal contention is that both ordinances, as applied to them, are unconstitutionally retroactive. They also contend that the taxes are discriminatory, in violation of the equal protection clause, and that the taxes conflict with the general law of the state and exceed the city's authority to tax lawful business. We conclude that the ordinances are valid, and we uphold the dismissal of appellants' action.

*Discussion*

■ A retroactive law is one which relates back to a previous transaction and gives it a different legal effect from that which it had under the law when it occurred. (See, e.g., *Bear Valley Mut. Wat. Co.* v. *County of San Bernardino*, 242 Cal.App.2d 68, 72 [51 Cal.Rptr. 53]; *Ware* v. *Heller*, 63 Cal.App.2d 817, 821 [148 P.2d 410].) Laws which have some retrospect effect are not per se invalid. It is only when the law operates to deprive a party of a vested or substantive right in violation of due process that it is invalid. (*Abrams* v. *Stone*, 154 Cal.App.2d 33, 41 [315 P.2d 453]. See also *Magnano Co.* v. *Hamilton*, 292 U.S. 40, 44 [78 L.Ed. 1109, 1114,

number of bedrooms, dwelling units, and/or square feet of commercial or industrial construction, as the case may be, for which any such certificate of occupancy is so issued, shall be included, excluding therefrom, however, any construction theretofore included in the computation by virtue of the issuance of a building permit by the City as provided in (a) above;

"(c) If construction is in progress during the year pursuant to a building permit issued before the beginning of the year, and such construction is not completed so that a certificate of occupancy issues with respect thereto during the year, and by virtue thereof such construction has not been included in computing the measurement of the tax under the provisions of either (a) or (b) of this subsection 6424.3, then the number of bedrooms, dwelling units or square feet of commercial or industrial building, as the case may be, under construction, at any time during the year shall be included in computing such tax measure for the year;

"(d) In no event shall any construction be included more than once in computing the measure of tax payable hereunder.

"*6424.4 Exclusions, Exemptions, Credits.*

"(a) The amounts of all excise taxes which shall have been unconditionally and finally paid to the City by any builder or developer under the provisions of Chapter 7 of Article VI of the Rancho Palos Verdes Municipal Code with respect to any residential, commercial or industrial construction or occupancy, shall be excluded from the amount of tax which would otherwise be payable by such builder or developer under the provisions of this section 6424. It is the intent of this subsection that in no event shall double taxation be imposed upon a builder or developer by virtue of the provisions of this section 6424 and of Article VI of this Code.

"(b) A builder or developer who shall pay the license tax imposed by this section 6424 shall not be required to pay the license tax imposed upon contractors under the provisions of section 6423 with respect to any residential, commercial or industrial construction included in the measure of tax imposed by this section 6424."

54 S.Ct. 599].) ■ Appellants' retroactivity argument, as we understand it, is that the challenged taxes are wrongful because they are in derogation of appellants' vested right to complete projects for which building permits and financing have been secured and where construction has been substantially completed. This somewhat novel proposition draws upon the line of "vested rights" cases originating in the zoning context, and further relies upon a characterization of the city taxes as being a nonbusiness tax imposed upon past construction activity. Appellants virtually concede, however, that their ongoing business activity might be subject to a business license tax which is measured by past business activity. (See *Neild* v. *District of Columbia,* 110 F.2d 246, 255 [71 App.D.C. 306]; *Fullerton Oil Co.* v. *Johnson,* 2 Cal.2d 162, 176 [39 P.2d 796]; *Title Ins. etc. Co.* v. *Franchise Tax Board,* 145 Cal.App.2d 60, 64 [302 P.2d 79].)

Appellants' attempt to use a vested rights principle to gain immunity from unforeseen taxes is virtually without precedent, and if followed to its logical conclusions, would shield any lawful business from newly enacted municipal taxes if that business had made any sort of irrevocable commitments, either financial or contractual, in commencing operations in that municipality. The imposition of a new tax, or an increase in the rate of an old one, is simply one of the usual hazards of the business enterprise. (*John McShain, Inc.* v. *District of Columbia* 205 F.2d 882, 883 [92 App.D.C. 358].) Simply because a tax draws upon antecedent facts for its operations does not render it retroactive. (See *Cox* v. *Hart,* 260 U.S. 427, 435 [67 L.Ed. 332, 337, 43 S.Ct. 154]; *Burks* v. *Poppy Construction Co.,* 57 Cal.2d 463, 474 [20 Cal.Rptr. 609, 370 P.2d 313].) Only where the measuring formula for the tax draws upon such disparate or long past antecedents so as to have little relation to the volume of current business might a business license tax fall on retroactivity grounds. (Cf. *Title Ins. etc. Co.* v. *Franchise Tax Board, supra,* 145 Cal.App.2d 60, 64-65.) Unlike the gift taxes struck down in *Blodgett* v. *Holden,* 275 U.S. 142 [72 L.Ed. 206, 48 S.Ct. 105] and *Untermyer* v. *Anderson,* 276 U.S. 440 [72 L.Ed. 645, 48 S.Ct. 353], the instant taxes were imposed not upon past, completed transactions, but upon the ongoing business of appellants. The business license tax, incorporating within it the environmental excise tax, was a tax upon residential developers which was measured by the number of dwelling units in construction or completed during the tax year. Insofar as it was measured upon some units which were substantially completed at the time of its enactment, taking into account some business activity occurring prior to its

enactment, does not render this tax upon developers fatally retroactive. (Cf. *Title Ins. etc. Co.* v. *Franchise Tax Board, supra.*) Business as to appellants' various housing units, even those substantially completed, was still ongoing, and the privilege of engaging in business as to those units could validly be assessed in the form of a license tax.

■ Appellants vigorously maintain, however, that the city taxes are not in fact privilege or license taxes measured on business activity, but are nonbusiness taxes on completed transactions. Among the indicia which the appellants claim betray the nonbusiness character of the taxes is that portion of the measuring formula in the business license tax which assesses dwelling units as to which construction is "in progress" during the tax year. They theorize that this provision could include dwelling units which were begun in a prior year, but which lay dormant during the course of the tax year. We cannot endorse such a strained reading of the ordinance, whose manifest intent is clearly to tax ongoing construction either at the time of the issuance of the building permit or certificate of occupancy, or in the interim, while construction is actually in progress. A second factor which appellants note is the radically different and more burdensome measure of taxation imposed upon them as residential developers in contrast to that levied upon other businesses.[4] Yet the instant taxes do not lose their character as taxes and become an illicit regulation of residential development simply because the tax is higher or is measured differently than is the case with other businesses. ■ It is within the discretion of the legislative body to exact different license taxes from different classes of business as long as the classification rests upon some rational basis. (*Gutknecht* v. *City of Sausalito,* 43 Cal.App.3d 269, 276 [117 Cal.Rptr. 782]. See *infra.*)

Lastly, appellants seize upon the prologue to the environmental excise tax ordinance (later reenacted in the business license ordinance) as indicative of the true color of the taxes assessed them. They suggest that the later enactment of the business license tax as to residential developers, incorporating the excise tax as part of a developer's license tax obligation, was an attempt to disguise the earlier tax in constitutionally pleasing garb. We take no cognizance of such purported motives in construing the ordinance. (See, e.g., *Ratkovich* v. *City of San Bruno,* 245

---

[4]Under the city's business license ordinance, most businesses are taxed on a percentage of gross receipts. General contractors are taxed at a fixed rate of $100 per year.

Cal.App.2d 870, 885 [54 Cal.Rptr. 333].) The fact that revenue from the excise tax is earmarked for special environmental uses cannot change the character of the tax. While it is denominated a tax upon construction and occupancy, it is clear—especially from its incorporation in the business license ordinance—that the tax is imposed upon the business of construction.

We conclude that the city taxes challenged here constitute a valid business license tax upon the ongoing business of residential construction and were prospective rather than retrospective in application.

## II

Appellants next argue that the business license tax unreasonably discriminates against residential developers in taxing them at a substantially higher rate than contractors. A similar argument was made in *Associated Home Builders etc., Inc.* v. *City of Newark,* 18 Cal.App.3d 107 [95 Cal.Rptr. 648], a case involving a "bedroom tax" ordinance akin to the one at bench. In *Newark,* it was the tax differential between residential and commercial builders which was challenged. There, it was reiterated that if facts reasonably can be conceived to sustain the ordinance, their existence is presumed and the burden of establishing arbitrary action rests upon the one assailing the classification. (*Id.,* at p. 109.) The court went on to sustain the ordinance on the ground that new residences, as opposed to new industry, require relatively greater fire and police protection and greater street use. Likewise, we can conceive of a valid distinction between residential developers and contractors sufficient to sustain the instant ordinance against an equal protection attack. Thus, there are significant differences both in business function and in the scope of development which justify the developer-contractor classification. That is, a developer normally plans an entire subdivision and then mass produces the homes within a somewhat expansive tract, as was the case with appellant Dayton. On the other hand, the contractor usually custom designs homes pursuant to individual contracts with the owners. Given such distinctions, the fact that the burden of the license tax may be borne unequally among the different classifications is of no constitutional significance. (See *Marsh & McLennan of Cal., Inc.* v. *City of Los Angeles,* 62 Cal.App.3d 108, 121 [132 Cal.Rptr. 796].)

In the same vein, appellants also claim that the imposition of the environmental excise tax upon construction of new residences, as

opposed to the expansion of existing residences, is without a rational basis. But the inherent distinction between a 627-unit condominium development and the addition of a single bedroom to an existing home is obvious and more than justifies the differing tax treatment.

■ The collateral claim is made that the' city taxes are a facade masking a pernicious regulatory scheme designed to halt housing projects such as those of appellants. Yet the substantive provisions of the two ordinances evidence no such intent. (See *Oakland Raiders* v. *City of Berkeley,* 65 Cal.App.3d 623, 626 [137 Cal.Rptr. 648].) Both ordinances expressly declare their purpose as strictly that of raising revenue. It is true that the environmental excise tax was enacted in part .to raise revenue to cope with the environmental problems occasioned by major development projects such as those of appellants. But the question of how money should be generated for this purpose is strictly a legislative judgment. (*Associated Home Builders etc., Inc.* v. *City of Newark,* 18 Cal.App.3d 107, 110 [95 Cal.Rptr. 648].) It is also true that residential developers such as appellants bear the lion's share of the taxes among builders under the existing tax scheme. Yet the tax, which amounts to one or two percent of the sale price per dwelling unit, is by no means confiscatory. Finally, the requirement that the excise tax be paid before occupancy is permitted, while regulatory in character, is imposed simply as a means of enforcement of the tax, and does not alter its overall character as a revenue measure. (Cf. *Oakland Raiders* v. *City of Berkeley, supra,* 65 Cal.App.3d 623, 626; *Arnke* v. *City of Berkeley,* 185 Cal.App.2d 842, 848 [8 Cal.Rptr. 645].)

III

Appellants' remaining contentions can be dealt with more summarily. Their third contention—that the city's environmental excise tax runs afoul of the state's Subdivision Map Act—is premised upon the erroneous assumption that a privilege or license tax upon builders is tantamount to a park-land dedication requirement as a precondition to the approval of a final subdivision map (Gov. Code, § 66477). ■ Just because tax revenue is channeled to a special fund from which park and recreational land is to be financed does not raise the tax to a prohibited subdivision exaction under section 66477 of the Government Code. The exercise of the city's plenary tax power is just one way among many that

revenue can be raised for the purchase of park-lands and open space.[5] *Associated Home Builders etc., Inc.* v. *City of Walnut Creek,* 4 Cal.3d 633 [94 Cal.Rptr. 630, 484 P.2d 606, 43 A.L.R.3d 847], construing what is now sections 66477 and 66479, provides no support for appellants' position and in fact cautions against application of its principles to other means of acquiring public park land. (*Id.,* at p. 642, fn. 8.)

Appellants' final contention is equally without merit. They claim that both taxes are levied upon mere steps in their business, within the meaning of *Newport Bldg. Corp.* v. *City of Santa Ana,* 210 Cal.App.2d 771, 777 [26 Cal.Rptr. 797] and thus exceed the city's power to tax lawful business under Government Code section 37101.[6] A similar contention was made and rejected in *Associated Home Builders etc., Inc.* v. *City of Newark, supra.* In *Newark,* the "bedroom tax" on builders was collected at the time of the issuance of the building permit. There, the court ruled that this was simply a choice of a reasonable time for payment of a validly imposed license tax, and not an attempt to regulate steps in the conduct of the business. (*Id.,* at p. 111.) Likewise, while the environmental excise tax here is collected at the time of the issuance of the certificate of occupancy, it represents a choice of a reasonable time for collection of a tax fixed by the number of bedrooms. The tax is no less a tax on the construction of dwellings by residential builders, levied upon construction, and not upon the occupancy of the dwelling.

The judgment is affirmed.

Kaus, P. J., and Ashby, J., concurred.

---

[5]Other methods include condemnation (Gov. Code, § 38010), purchase through the issuance of municipal bonds (Gov. Code, § 43601), and acquisition in connection with redevelopment property (Health & Saf. Code, § 33445).

[6]Government Code section 37101 provides: "The legislative body may license, for revenue and regulation, and fix the license tax upon, every kind of lawful business transacted in the city....."