[Civ. No. 65067. Second Dist., Div. Three. Apr. 23, 1984.]

THE PEOPLE, Plaintiff and Appellant, v.
H & H PROPERTIES, Defendant and Respondent.

896

COUNSEL

John K. Van de Kamp and Robert H. Philibosian, District Attorneys, Harry B. Sondheim and Eugene D. Tavris, Deputy District Attorneys, for Plaintiff and Appellant.

Engstrom, Lipscomb & Lack and Jack A. Klauschie, Jr., for Defendant and Respondent.

OPINION

**KLEIN, P. J.**—Plaintiff and appellant People of the State of California (People) appeal from an order granting defendant and respondent H & H Properties' (H & H) demurrer without leave to amend to the fourth and fifth causes of action in the People's complaint for injunction, civil penalties and other equitable relief.

Since H & H's rights to proceed with its condominium conversion had vested prior to the enactment of the Los Angeles County Rent Control Ordinance, it could go forward but only subject to compliance with the ordinance. Therefore, the fourth and fifth causes of action are adequate as against a demurrer and the order is reversed.

PROCEDURAL AND FACTUAL BACKGROUND

H & H purchased 2 adjacent apartment buildings, each consisting of 62 units, located in West Hollywood, in the County of Los Angeles. On or about March 14, 1979, H & H obtained tentative map approval for the conversion of the apartment buildings into condominiums, with final map approval being granted on or about July 24, 1979.

On May 12, 1980, the Board of Supervisors of the County of Los Angeles enacted ordinance No. 12148 as an amendment to ordinance No. 11950, the county rent regulation ordinance, to become effective May 30, 1980, and operative June 30, 1980.

On April 15, 1981, the People filed their complaint for injunction, civil penalties and other equitable relief seeking in the fourth and fifth causes of action orders requiring H & H to comply with section 6.5 of Los Angeles

County Ordinance No. 12148 (section 6.5),[1] as well as civil penalties under Business and Professions Code section 17200 for unfair and/or unlawful business practices.

The gravamen of the fourth and fifth causes of action was that H & H violated section 6.5 by failing to furnish relocation assistance in locating comparable apartments to its tenants, as well as by its failure to pay either the moving costs or the compensation for anticipated rent increases to the displaced tenants as required under the ordinance.

The trial court sustained H & H's demurrer to the fourth and fifth causes of action without leave to amend, finding that the ordinance, as applied, would constitute an unconstitutional impairment of H & H's vested right to proceed with its condominium project.

CONTENTIONS

The People contend that H & H had no vested right in its condominium conversion plan, such as would cause section 6.5 to be an unconstitutional infringement thereon.

---

[1]Section 6.5 states in pertinent part: "Relocation Assistance to Tenants Evicted for the Purpose of . . . Converting a Unit Into a Condominium, . . .; Rental Housing Production Fee. [¶] A. Applicability. [¶] The relocation assistance provided for in paragraphs B, C and D of this section shall be provided to tenants who are evicted for the purpose of . . . converting a unit into a condominium, . . ., or to tenants who voluntarily vacate after receiving written notice from the landlord of the intention to demolish or convert; provided, however, that such relocation assistance shall not be required if the rental unit was rented to all of the current tenants subsequent to their receipt of a written notice of intention to demolish or convert. [¶] B. Assistance in Locating Comparable Unit. [¶] The landlord shall assist each tenant in finding a comparable replacement rental unit. Comparability shall be determined from the following factors: size; price; location, and amenities. A unit is not comparable if it is located in a building for which an application for conversion purposes has been filed with any governmental agency. Such assistance shall be available to all eligible tenants within ten (10) days of the date on which the 120 day notice required by Government Code Section 66427.1 is sent to each tenant. Such assistance shall include, at a minimum, the following: [¶] 1. Making available to each tenant an updated report concerning the availability of comparable rental housing in the area of the tenant's present unit; [¶] 2. Driving tenants without cars, and assisting tenants with cars, in order to inspect units. [¶] Until each tenant is successfully relocated pursuant to the provisions of this section, the tenants shall be permitted to reside in the unit presently occupied in the conversion project; provided, however, the subdivider is not required to consent to continue tenancy beyond the latest of (1) 12 months from the date of tentative tract map or tentative parcel map approval, or (2) 120 days after the date on which the 120 day notice of intent is given to all tenants, or (3) the receipt by the subdivider of the final subdivision report from the Department of Real Estate. [¶] C. Moving Costs. [¶] The landlord shall pay $500.00 to each eligible household to cover moving costs, said amount to be paid on or before the date the unit is vacated. [¶] D. Compensation for Anticipated Rent Increases. [¶] The landlord shall pay to each eligible household, at the time a unit is vacated, $1,000.00 or at the tenant's election, a sum equal to the current monthly rental times the number of years or portions thereof a tenant has occupied the unit, if, at the time the unit was vacated, it was subject to Sections 3 and 4 of this Ordinance."

DISCUSSION

1. *This is not a case for the application of the vested rights doctrine.*

Typically, an issue of vested rights arises where a developer has secured a *tentative* approval but prior to *final* approval, further conditions are imposed as conditions precedent to such final approval being granted.

*El Patio* v. *Permanent Rent Control Bd.* (1980) 110 Cal.App.3d 915 [168 Cal.Rptr. 276] held that no conditions imposed subsequent to tentative map approval could prevent approval of a final subdivision map. The result was that the developers in *El Patio* were entitled to consideration of approval of the final map without regard to the provisions of a newly passed rent control charter amendment and any rules or ordinances enacted pursuant to it.

Similarly, in *Youngblood* v. *Board of Supervisors* (1978) 22 Cal.3d 644 [150 Cal.Rptr. 242, 586 P.2d 556], where the problem was a change in density limitations, it was held that the final map must conform to the general plan in effect when the tentative map was approved, not to the plan in effect when the final map was submitted for approval.

Another situation where a vested right to complete development was recognized was where a developer secured a building permit and in good faith reliance thereon, diligently commenced construction and performed substantial work and incurred substantial liabilities before the effective date of the act. (*Oceanic California, Inc.* v. *North Central Coast Regional Com.* (1976) 63 Cal.App.3d 57 [133 Cal.Rptr. 664], cert. den. and app. dism. (1977) 431 U.S. 951 [53 L.Ed.2d 267, 97 S.Ct. 2668]; *Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785 [132 Cal.Rptr. 386, 553 P.2d 546], cert. den. and app. dism. (1977) 429 U.S. 1083 [51 L.Ed.2d 529, 97 S.Ct. 1089]; *Billings* v. *California Coastal Com.* (1980) 103 Cal.App.3d 729, 735 [163 Cal.Rptr. 288].)

In the case at bar there can be no question but that H & H's right to proceed with its condominium conversion project had vested, but the trial court's reliance on this fact in sustaining the demurrer was erroneous. The line of vested rights cases deals with the same recurrent issue: the determination of the point in time in the development process that the developer's right to complete a project accrues, so that the developer may go forward as originally planned, as contrasted with having to satisfy further and additional conditions if the project is to go forward at all.

H & H had received both *tentative and final* map approvals almost a year prior to the enactment of ordinance No. 12148 and section 6.5 thereof, and

therefore its rights had fully vested as of that point in time; consequently there can be no question but that the conversion could proceed. Section 6.5 did not intervene and constitute an additional condition precedent to final approval, since no further approvals were necessary. Rather, section 6.5 merely requires H & H, and all developers located in Los Angeles County interested in converting their apartments to condominiums, to satisfy certain existing requirements pertaining to tenants dislocated by the conversion.

There is no reason in logic or law to accord H & H any different treatment than all other similarly situated developers with vested rights who are bound by the county rent control ordinance.

Further, the line of building permit cases is not on point here as this is a conversion project and the only permit required was a minor one relating to the addition of wood siding for cosmetic purposes.

■ **2.** *Properly drafted rent control ordinances are a constitutional exercise of the police power.*

*Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 158 [130 Cal.Rptr. 465, 550 P.2d 1001] stated: "It is now settled California law that legislation regulating prices or otherwise restricting contractual or property rights is within the police power if its operative provisions are reasonably related to the accomplishment of a legitimate governmental purpose [citations] and that the existence of an emergency is not a prerequisite to such legislation."

*Birkenfeld* further held that there is no more stringent requirement for regulation of rents than for the regulation of prices generally, as restrictions on the use of real property are among the foremost examples of proper exercises of the police power. (*Id.*, at p. 159.)

■ It has long been settled that the police power extends to objectives in furtherance of the public peace, safety, morals, health and welfare, and is elastic and capable of expansion to meet existing conditions. (*Id.*, at p. 160.)

Section 1 of Los Angeles County Ordinance No. 12148, the county rent regulation ordinance, states as its purpose the protection of tenants who otherwise would either lose their homes due to the exorbitant level to which rents would rise absent controls, or be forced to do without other necessities

of life, thereby endangering the health and welfare of the county and its residents.

 The ordinance thus states on its face the existence of conditions in the county under which residential rent controls are reasonably related to the promotion of the public health and welfare and are therefore within the police power.

 In determining the validity of a legislative measure under the police power, a court's sole concern is whether the measure reasonably relates to a legitimate governmental purpose, which is not to be confused with the wisdom of the measure. (*Birkenfeld* v. *City of Berkeley, supra,* 17 Cal.3d at p. 159.) Rent controls will be sustained as a proper exercise of the police power unless there is a "complete absence of even a debatable rational basis for the legislative determination . . . that rent control is a reasonable means of counteracting harms and dangers to the public health and welfare emanating from a housing shortage." (*Id.,* at p. 161.)

 We cannot say that the means by which section 6.5 seeks to implement its purpose of protecting tenants living in rent-controlled apartments, who are displaced by condominium conversions and are forced back into the housing market, are so incongruent with the ends that it is invalid. A $500 moving allowance, relocation assistance, and a formula compensation for future rent increases are all reasonable measures.

In *Westfield-Palos Verdes Co.* v. *City of Rancho Palos Verdes* (1977) 73 Cal.App.3d 486, 490-495 [141 Cal.Rptr. 36], the city enacted an environmental excise *tax* ordinance, exacting a fee from developers as a special nonrecurring tax. Its purpose was to create a source of revenue with which the city could meet the serious ecological and environmental problems created by new construction. The rate of the tax was $500 per bedroom to a maximum of $1,000 per dwelling unit, and 30 cents per square foot of gross building area for new industrial and commercial buildings. The court held that the ordinance as applied to developers was not unconstitutionally retroactive, although the developers had obtained the necessary governmental permits and approvals and had commenced construction on their projects. The imposition of a new tax, or an increase in the rate of an old one, is simply one of the usual hazards of the business enterprise, and the use of the vested rights principle to gain immunity from unforeseen taxes is virtually without precedent. (*Id.,* at p. 494.)

Although rent control is not technically a tax, every judicial definition of "tax" includes some reference to an enforced contribution of money assessed by authority of the sovereign state, and imparts a particular relation-

ship between individuals and the government. (*New Consumers Bread Co.* v. *Commissioner of Int. Rev.* (3d Cir. 1940) 115 F.2d 162, 164 [131 A.L.R. 1329].) *Linnell* v. *State Dept. of Finance* (1962) 203 Cal.App.2d 465, 469 [21 Cal.Rptr. 785] defined "tax" as a forced charge, imposition or contribution. Similarly, *State* v. *Florida State Racing Commission* (Fla. 1953) 70 So.2d 375, 379 wrote, "In common parlance, a tax is a forced charge or imposition, it operates whether we like it or not and in no sense depends upon the will or contract of the one on whom it is imposed."

*Westfield-Palos Verdes Co.* v. *City of Rancho Palos Verdes, supra,* 73 Cal.App.3d at page 494, further held that only where the amount of the tax bears little relation to the volume of current business might the tax fall on retroactivity grounds. The amounts of the tax involved in *Westfield* are comparable to the costs to be borne by developers in the instant case. Finally, *Westfield* upheld the requirement that the excise tax be paid before occupancy as a regulatory measure imposed simply as a means of enforcement of the tax. (*Id.,* at p. 498.) The requirement did not fail as a violation of the developer's vested right.

3. *Section 6.5 as applied to H & H is not an ex post facto law.*

■ Section 6.5 does not operate retroactively merely because some of the facts or conditions upon which its application depends came into existence prior to its enactment, and it imposes sanctions only upon conduct occurring after the date the ordinance becomes law. (*Burks* v. *Poppy Construction Co.* (1962) 57 Cal.2d 463, 474 [20 Cal.Rptr. 609, 370 P.2d 313].) Section 6.5 does not purport to penalize past conduct, and no problem of retroactivity is involved.

CONCLUSION

■ Rent control is a valid exercise of the police power, and it affects the vested rights of every landlord who owned property before the rent control measure took effect. We find no reason to exempt developers who are in the midst of a condominium conversion from an admitted hardship that affects the rest of the class of residential landlords. If the project has lost its attractiveness, the developers are free to pull out, and they always retain the option of holding on to the units and leasing them out.

Vested rights is not the question here. H & H is free to proceed. It simply must pay somewhat more than it expected for the privilege of engaging in a condominium conversion in Los Angeles County in the 1980's.

## DISPOSITION

The judgment is reversed. Appellant to recover costs on appeal.

Lui, J., and Danielson, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 20, 1984.