[No. C015814. Third Dist. Jan. 25, 1994.]

MICHAEL J. HELLER et al., Plaintiffs and Appellants, v. FRANCHISE TAX BOARD, Defendant and Respondent.

COUNSEL

McDonough, Holland & Allen, Robert R. Rubin and Mark A. Wasser for Plaintiffs and Appellants.

Daniel E. Lungren, Attorney General, Lawrence E. Keethe and Michael J. Cornez, Deputy Attorneys General, for Defendant and Respondent.

OPINION

NICHOLSON, J.—Michael and Sylvia Heller appeal from the trial court's grant of summary judgment in favor of the Franchise Tax Board. (Code Civ. Proc., § 437c.) Although this appeal involves the tax liability of the Hellers as individuals, its resolution turns on whether the accumulated adjustments account (AAA) of a California S corporation is increased for interest income earned on United States Treasury Bills, and this is the only issue presented on appeal. We reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

The Franchise Tax Board (the Board) audited the Hellers and Tecon Corporation, a California S corporation, for the tax years 1987, 1988, and 1989. During those years, the Hellers were shareholders of Tecon, and owned more than 98 percent of Tecon's stock.

During the years in question, Tecon owned United States Treasury Bills, from which it earned interest of $119,555 in 1987, $162,251 in 1988, and $262,308 in 1989. Tecon increased its AAA by the amount of this treasury bill interest income during each of the three years. In the course of its audit, the Board determined this increase to the AAA was improper.

The resulting adjustments increased the amount of Tecon's taxable distributions to the Hellers, and accordingly the Board issued notices of assessments to the Hellers for 1987, 1988, and 1989. The Hellers paid the assessments and then filed claims for refund. When the refunds were denied, the Hellers filed this lawsuit for a refund of the increased California income taxes paid.

The facts were not disputed, and both the Hellers and the Board filed motions for summary judgment, which the trial court heard simultaneously. The trial court granted the Board's motion, and denied the Hellers' motion.[1]

## DISCUSSION

### I

For federal income tax purposes, there are two kinds of corporations: "C corporations" (so named because their governing provisions are found in subch. C, ch. 1, subtit. A of the Int.Rev. Code) and "S corporations" (governed by subch. S of the same chapter). A C corporation is a separate entity which pays corporate income taxes "according to or measured by its net income." (Rev. & Tax. Code, § 23151, subd. (a).)

In contrast, an S corporation generally does not pay income taxes as an entity. (26 C.F.R. § 1.1363-1 (1993).) Rather, the S corporation files only an informational return reporting for the taxable year its gross income (or loss) and deductions, its shareholders, and the shareholders' pro rata shares of each item. (26 U.S.C. § 6037(a).) The items are then "passed through" on a pro rata basis to the shareholders, who report them on their personal income tax returns. (*Beard* v. *United States* (11th Cir. 1993) 992 F.2d 1516, 1518; see also *Fehlhaber* v. *Commissioner, I.R.S.* (11th Cir. 1992) 954 F.2d 653, 654.) "The S corporation is, in effect, a Code-created hybrid combining traits of both corporations and partnerships." (*Beard* v. *United States, supra*, 992 F.2d at p. 1518.)

Until 1987, California did not distinguish between C corporations and S corporations for state tax purposes, instead treating all corporations as C corporations. (2 Plant & Eager, Cal. Taxation (2d ed. 1993) § 45.121, p.

---

[1]The Hellers' summary judgment motion also included other issues not raised on appeal. The trial court's order stated, in pertinent part: "The gist of defendant's argument is that the income from the federal bonds (which in California is taxable for purpose[s] of the corporation's taxes but non-taxable to individuals) should be treated as non-taxable for purposes of the AAA account since the income from the bonds flowing to plaintiffs was non-taxable to them as shareholders. The whole concept of the S Corporation is that the corporate profits are not taxed (save for the aberration of 2.5% in California) at the corporate level but at the shareholder level. As shareholders, plaintiff[s'] corporate income is taxed on an individual basis. [¶] In this case, the plaintiff[s] increased the AAA account by the amount of the bond interest on the ground that it was a permissible increase and would not result in taxable distributions to the shareholders. Thus, under plaintiffs' interpretation, the shareholders would not be taxed on this interest. The defendant's interpretation would decrease the AAA account, resulting in taxation of the excess distributions. [¶] [Internal Revenue Code] § 1368(e)(1)(A) provides that the AAA account is not adjusted for income which is otherwise tax exempt under the [Internal Revenue Code]. The bond interest is tax exempt to the individual, although it is included in the tax base for the state 2.5% franchise tax. . . . [¶] The defendant's interpretation of the law is correct. . . ."

IV-1715.) Beginning in 1987, California modified its position so that "Subchapter S of Chapter 1 of Subtitle A of the Internal Revenue Code, relating to the tax treatment of 'S corporations' and their shareholders, shall apply, except as otherwise provided in this chapter." (Rev. & Tax. Code, § 23800, subd. (a).) One difference between federal and California law in the treatment of S corporations is under federal law, with certain exceptions not relevant here, S corporations do not pay federal income tax. (26 U.S.C. § 1363(a); 26 C.F.R. § 1.1363-1 (1993).) However, California imposes a state tax upon the S corporation's net income. (Rev. & Tax. Code, § 23802, subd. (b)(1).) On January 1, 1987, Tecon elected to become an S corporation. At that time, Tecon held over $8 million in retained, undistributed earnings.

C corporations are taxed upon their income as separate entities, and distributions of earnings and profits by C corporations to their shareholders generally are taxable to the shareholders as dividends. (2 Plant & Eager, *supra*, § 45.40, at p. IV-1704.2.) In contrast, S corporation shareholders are taxed on their share of the S corporation's income regardless of whether the corporation makes any distributions. (Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders (5th ed. 1987) ¶ 6.08, p. 6-25.) When S corporations make distributions, the method for determining whether distributions are taxable or nontaxable is the AAA.

■ The AAA is an accumulation of the corporation's taxable income items passed through to shareholders, less loss and deduction items and previous distributions made by the corporation. (26 U.S.C. § 1368(e)(1); see also 11 Mertens, Law of Federal Income Taxation (1992) § 41B.184, p. 268.) The AAA has particular significance here, because Tecon had existing earnings and profits from its prior years as a C corporation.

■■ "The AAA is a means by which distributions of S corporation earnings and profits (nontaxable) may be distinguished from distributions from Subchapter C accumulated earnings and profits (taxable). The AAA is a mechanism through which distributions attributable to accumulated C corporation earnings and profits are taxable as dividends in order to prevent the shareholders of a C corporation which has recently converted to an S corporation from distributing C corporation earnings without tax. [¶] To achieve this purpose, the AAA tracks undistributed taxable income during the time the Subchapter S election is in effect. Under Section 1368, distributions are considered to come first from taxable S corporation earnings, those in the AAA, and then from accumulated C corporation earnings and profits." (11 Mertens, *supra*, § 41B.185, at p. 270, fns. omitted.)

Accordingly, when distributions are equal to or less than the AAA balance, such distributions are not taxable to the shareholders. (26 U.S.C.

§ 1368(c)(1); see also 11 Mertens, *supra*, § 41B.01, at p. 3.) Distributions exceeding the AAA balance, however, are deemed distributions from earnings and profits and are taxable to the shareholders as a dividend. (26 U.S.C. § 1368(c)(2); see also 11 Mertens, *supra*, § 41B.01, at p. 3.)

## II

With this background, we now reach the issue raised by this appeal.[2] ▉ Where, as here, "the decisive facts were undisputed, we are confronted with questions of law and not bound by the trial court's findings." (*Tenneco West, Inc.* v. *Franchise Tax Bd.* (1991) 234 Cal.App.3d 1510, 1520 [286 Cal.Rptr. 354].)

▉ Both sides acknowledge section 23800 of the Revenue and Taxation Code provides "Subchapter S . . . of the Internal Revenue Code, relating to the tax treatment of 'S corporations' and their shareholders, shall apply, except as otherwise provided." Noting the AAA is not mentioned within the chapter, the parties next observe section 1368(e)(1) of the Internal Revenue Code, states the AAA "is adjusted . . . in a manner similar to the adjustments under section 1367 (except that no adjustment shall be made for income . . . which is exempt from tax under this title . . .)."

Tecon increased its AAA by the amount of its United States Treasury Bill interest income for 1987, 1988, and 1989. Treasury bill interest income is included in "gross income" for purposes of computing the California corporate tax (Rev. & Tax. Code, § 24272), but such interest income is not taxable to individuals. (See CCH Cal. Tax Reporter (1985) ¶ 15-601.17, pp. 2303-2304.) Thus, the question posed is whether adjustments to the AAA are based upon corporate level taxability or shareholder level taxability.

The Hellers contend the AAA is based upon corporate level taxability. Tecon reported the treasury bill interest as taxable income in 1987, 1988, and 1989, and paid taxes accordingly. Since such interest income is subject to the corporate franchise tax, the Hellers argue the AAA may be increased by the amount of the interest income.

The Board approaches this issue from a different angle, asserting the AAA is a measure of the S corporation's items of income, loss, deduction or credit based on the taxability of the items at the shareholder level. The Board

---

[2]The Board moved for permission to file a supplemental brief, alleging the reply brief raised a new issue. The purposed "new" issue was "that [the Board's] statutory interpretation conflicts with the 'plain' language of the statute." Contrary to the Board's representation, the Hellers properly raised this issue in their opening brief. Accordingly, we denied the Board's request for supplemental briefing.

contends "[t]he fact that the income was taxable at the corporate level is not relevant to the AAA account calculation," and cites two provisions of the Internal Revenue Code which, when considered together with the challenged provision, purportedly establish the propriety of the Board's position. (26 U.S.C. §§ 1366, 1367.)

The two provisions cited by the Board refer to the individual shareholder in the context of determining the shareholder's pro rata share of the corporation's income and in determining the basis of a shareholder's stock. With regard to determining the shareholder's tax liability, section 1366 provides ". . . there shall be taken into account the shareholder's pro rata share *of the corporation's* . . . items of income (including tax-exempt income), loss, deduction, or credit . . . ." (26 U.S.C. § 1366(a)(1), italics added.) With regard to the applicability of section 1367, pertaining to determining the basis of a shareholder's stock, the Internal Revenue Service has noted, "*except for the treatment of tax-exempt income* (and related expenses) and certain Federal tax liabilities, the AAA adjustments are the same as those made to the basis of stock under section 1367." (See Proposed Treas. Regs. (57 Fed. Reg. 24426 (June 9, 1992)), italics added.) Thus, these statutes provide no support whatsoever for the Board's assertion the AAA is adjusted "based on whether or not the *individual shareholder* would have taxable income and whether or not the *individual shareholder* could .deduct the expense." (Italics in original.)

Our review of the cited statutory provisions and related authorities compels the conclusion while the S corporation's items of income, loss, deductions, and credit are *taxed* at the shareholder level, the *character* of those items is determined at the corporate level. Section 1368 provides the AAA is "an account of the S corporation." (26 U.S.C. § 1368(e)(1)(A).) "Each item of corporate income and expense is 'passed through' to the shareholders in exactly the same form as received by the corporation—i.e., as ordinary income or loss, capital gain or loss, tax credits, charitable contributions, etc." (Friedman, Cal. Practice Guide: Corporations (The Rutter Group 1993) ¶ 2:121, p. 2-38; see also Bittker & Eustice, *supra*, ¶ 6.06, at p. 6-15 ["income, losses, deductions, and credits retain their corporate-level character and are allocated to the S corporation's shareholders on a per-share, per-day basis . . . and are treated by shareholders as if attributable directly to the source from which they were generated"]; 1 Willis et al., Partnership Taxation (4th ed. 1993) § 2.03, p. 2-8 ["[t]he most noteworthy aspect of S corporations is the pass-through characteristic they share with partnerships, under which the character of income, deduction, loss, and credit passes through unchanged to the shareholders of S corporations"].) Tecon's treasury bill interest was taxable income; Tecon paid corporate taxes on this interest income; and

Tecon properly increased its AAA by the amount of this treasury bill interest.

By analogy, we note the code also provides: "The character of any item included in a shareholder's pro rata share under paragraph (1) of subsection (a) shall be determined as if such item were realized directly from the source from which realized by the corporation, or incurred in the same manner as incurred by the corporation." (26 U.S.C. § 1366(b).) "This implies that the determination of whether an asset is a capital asset is made at the corporate level." (11 Mertens, *supra*, § 41B.98, at p. 141.) "[C]orporations are almost universally accorded recognition as separate, viable entities under the tax law, and therefore the character of an asset is normally determined at the corporate level." (*Id.* at p. 142; see also *Huxford* v. *United States* (5th Cir. 1971) 441 F.2d 1371, 1374-1375 ["[s]ubject to exceptions not applicable in the instant case, the character of the gain on the sale of an asset by a Subchapter S corporation is determined at the corporate level, and a capital gain to the corporation is a capital gain to its shareholders"].)

Our conclusion is further bolstered by the new Treasury Regulations concerning the AAA. Formerly, the Code of Federal Regulations contained no provisions with regard to the AAA. However, in 1992, the Internal Revenue Service proposed section 1.1368-2(a)(2), which explicitly provides the AAA "is increased for the taxable year of the corporation by the sum of the following items *with respect to the corporation* for the taxable year: [¶] (i) The items of income described in section 1366(a)(1)(A) other than income that is exempt from tax . . . ." (Proposed Treas. Regs. § 1.1368-2(a)(2) (57 Fed. Reg. 24436 (June 9, 1992)), italics added.) This proposed regulation became effective January 1, 1994. (59 Fed. Reg. 12, 20, 23 (Jan. 3, 1994).) In the "explanation of provisions," the Internal Revenue Service twice states the "AAA is a corporate level account." (*Id.* at p. 14.)

In addition to the statutory support for the Hellers' position, we note one of the purposes of the subchapter S provisions is to avoid double taxation. (*Byrne* v. *C.I.R.* (7th Cir. 1966) 361 F.2d 939, 942; see also 11 Mertens, *supra*, § 41B.183, at p. 268 [one of primary purposes of AAA is to "provide a mechanism for making tax free distributions of previously taxed income"].) Tecon is required to include the interest income from its treasury bills in its gross income when computing its state income taxes. (See Rev. & Tax. Code, § 24272.) Thus, Tecon has already paid state income taxes on this interest income. The Board seeks to tax the same interest income a second time by denying a corresponding increase to the AAA.

The Board insists determining the tax-exempt nature of income at the corporate level results in improper tax-free distributions from the AAA in

contravention of 26 United States Code section 1368. According to the Board, moneys representing prior C corporation earnings and profits, which ordinarily are taxable to shareholders, are distributed to shareholders tax-free by increasing the AAA by the amount of the treasury bill interest income. However, our ruling permits an increase to the AAA only to the extent the S corporation has already paid taxes on the interest income. Such a conclusion is consistent with the statutory language and the articulated purpose of avoiding double taxation. Even assuming some tension exists between the purposes of the two statutes, we find no legitimate basis upon which to correct any anomaly in the manner sought by the Board. Accordingly, the Board's remedy lies with the Legislature.

## DISPOSITION

The judgment (order) is reversed. The Franchise Tax Board is hereby ordered to issue refunds to the Hellers in the amount of $10,980 for the 1987 tax year, $14,902 for the 1988 tax year, and $24,091 for the 1989 tax year, plus applicable interest.

Sims, Acting P. J., and Davis, J., concurred.

A petition for a rehearing was denied March 9, 1994.