[No. A066930. First Dist., Div. Five. Nov. 6, 1995.]

HANDLERY HOTELS, INC., Plaintiff and Appellant, v.
FRANCHISE TAX BOARD, Defendant and Respondent.

**COUNSEL**

Steefel, Levitt & Weiss, Jordan P. Rose, Marc Lackner and Lisa C. Sims for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, and Timothy G. Laddish, Assistant Attorney General, for Defendant and Respondent.

**OPINION**

**PETERSON, P. J.**—Handlery Hotels, Inc. (Handlery) appeals from the trial court's grant of summary judgment in favor of the Franchise Tax Board (the Board). (Code Civ. Proc., § 437c.) In its complaint, Handlery sought a refund of taxes, contending that it had overpaid its 1991 franchise tax. The only issue before this court is a purely legal one—whether Handlery's 1991 franchise tax should be calculated using the California "C corporation" franchise tax rate of 9.3 percent set forth in California Revenue and Taxation Code section 23151, subdivision (d) or by using the California "S corporation" franchise tax rate of 2.5 percent set forth in former Revenue and

Taxation Code[1] section 23802, subdivision (b)(1). The trial court held Handlery is foreclosed from obtaining a refund because its 1991 franchise tax was properly computed using the 9.3 percent "C corporation" rate. We affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

The facts in this case have been stipulated—it is the court's legal conclusion which is the subject of controversy. Prior to January 1, 1991, Handlery was a "general" or "C corporation." Effective January 1, 1991, Handlery qualified as, and properly elected to be treated as, an "S corporation" for purposes of taxation under California and federal law.

On or about October 4, 1991, Handlery timely filed its California corporation franchise tax return covering the income year January 1, 1990, through December 31, 1990. In its return, Handlery calculated its 1991 franchise tax liability using the ordinary franchise tax rate of 9.3 percent. Handlery paid, in a timely fashion, all of the tax liability shown on the return.

The franchise tax is imposed on every nonfinancial corporation organized in California and foreign corporation doing business in California. (§ 23151.1) It taxes that corporation's privilege of doing business in a given year (the taxable year), measured by a percentage of its net income in the immediately preceding year (the income year). (*Willamette Industries* v. *Franchise Tax Board* (1979) 91 Cal.App.3d 528, 533 [154 Cal.Rptr. 183].) Generally, the franchise tax for the taxable year (1991) if over $800 is, and was here, prepaid in quarterly installments during the fourth, sixth, ninth, and twelfth months of the income year (1990). (§§ 19023, 19025, & 23153.)

After Handlery filed its 1991 franchise tax return, it contended that it had overpaid its 1991 franchise tax. As a result of Handlery's 1991 "S corporation" election, it claims it should have computed its 1991 franchise tax based upon its 1990 net income, using the California "S corporation" franchise tax rate of 2.5 percent instead of the ordinary franchise tax rate of 9.3 percent. Accordingly in November 1992, Handlery filed with the Board an amended corporate franchise tax return for income year 1990 in which it claimed a

---

[1]Unless otherwise indicated, all subsequent statutory references are to the Revenue and Taxation Code (the Code). Unless otherwise noted, language cited from the Code has remained unchanged since 1991, the year at issue in this case. The "S corporation" rate was reduced to 1.5 percent as of January 1, 1994. (§ 23802, subd. (b)(1).)

refund for the difference between the 9.3 percent franchise tax it paid and the 2.5 percent franchise tax it claimed it actually owed as a duly qualified California "S corporation." Handlery's refund request was effectively denied by the Board's inaction, resulting in the current litigation.

To fully grasp the nature of the dispute, it is necessary to understand the tax structure governing California "S corporations." A "general" or "C corporation" pays tax on its income. If the corporate earnings are distributed to the shareholders in the form of dividends, the shareholders also pay a tax. This is the concept of "double taxation" of corporate income. The United States Congress enacted subchapter S of the Internal Revenue Code to ameliorate the harsh "double taxation" consequences of operating a small business as a corporation. (Int.Rev. Code, §§ 1361-1379.)

Generally speaking, federal subchapter S election allows a qualifying "small business corporation" to avoid paying income tax at the corporate level. (See Int.Rev. Code, §§ 1361(b) & 1363(a).) Instead, each item of corporate income and expense is passed through the "S corporation" unchanged and reported on a pro rata basis on the tax returns of the individual shareholders of the "S corporation." (See Int.Rev. Code, §§ 1363(a) & 1366(b); *Heller* v. *Franchise Tax Bd.* (1994) 21 Cal.App.4th 1730, 1733, 1736-1737 [27 Cal.Rptr.2d 88] (*Heller*).)

For many years, California law provided no equivalent to "S corporation" status. However, effective in 1987, California first recognized "S corporation" status, amending the Code to generally conform to federal tax treatment of "S corporations." (See § 23800 et seq.) One notable difference between California and federal law is that California continues to impose franchise taxes on "S corporations," although at a rate substantially lower than that imposed on "C corporations." (Cf. Int.Rev. Code, § 1363(a) and § 23802, subd. (b)(1).) Handlery conceded at oral argument that its 1990 corporate net income was not passed through and taxed to its shareholders as though it were an "S corporation" in that year.

The parties stipulated to the relevant facts and filed cross-motions for summary judgment. Handlery argued that because it elected to become an "S corporation" in 1991, it was entitled in the 1991 taxable year to recalculate its franchise taxes, prepaid during the income year of 1990, by applying the "S corporation" rate of 2.5 percent rather than the "C corporation" rate of 9.3 percent to its 1990 net income. The Board countered that while Handlery's argument had "superficial appeal," the pertinent Code sections decreed that

once a corporation elected to be treated as an "S corporation," the more favorable franchise tax rate applied to the first income year after "S corporation" status, in Handlery's case the 1991 income year.

The trial court concluded that the pertinent provisions of the Code supported the Board's interpretation and could lead only to one conclusion—that a "[C] Corporation such as . . . [Handlery] which elects to be an 'S Corporation' effective January 1, 1991 under the [Code] will apply the 'S corporation' rate to its 1991 income year and pay these taxes during the 1992 taxable year. During the 1991 taxable year the Corporation must pay the 'C corporation' rate for the 1990 income year because it was not yet a valid 'S corporation' under federal law during 1990."

## II. DISCUSSION

 The issue for decision is whether a taxpayer which validly elects to be an "S corporation" in 1991 is entitled to apply the reduced "S corporation" franchise tax rate to its 1990 income year in computing its 1991 franchise tax, as Handlery claims; or whether that reduced rate first applies to its 1991 income year which is used as a "measuring rod" for its 1992 franchise tax, as the Board claims. (*Title Ins. etc. Co. v. Franchise Tax Board* (1956) 145 Cal.App.2d 60, 64 [302 P.2d 79] (*Title Ins.*).) We review this question de novo. (*Heller, supra,* 21 Cal.App.4th at p. 1735.)

It is obvious that we first turn to the Code to determine the merits of Handlery's refund claim. As already noted, California first recognized "S corporation" status (with a concomitant reduction of the franchise tax rate) in 1987. We find it instructive, as did the trial court, to review how the Legislature handled the bridge year, calendar year 1987, when many corporations doing business in California changed their status from "C corporation" to "S corporation." By legislative terms then in effect, the favorable tax treatment inherent in "S corporation" status first applied "For any *income year* beginning on or after January 1, 1987 . . . ." (§ 23800, italics added.)[2] The 1987 "income year" language is repeated throughout section 23801 for the purpose of identifying when "S corporation" provisions go into effect. For example, under section 23801, subdivision (a)(2)(A), if a corporation

---

[2]The distinction between a taxable year and an income year is clearly set out in the Code. " 'Taxable year' " is defined by section 23041, subdivision (a) to mean "the calendar year, or the fiscal year for which the tax is payable." " 'Income year' " is defined in section 23042, subdivision (a) as "the calendar year or the fiscal year upon the basis of which the net income is computed."

already had a valid federal "S corporation" election in effect "for the *income year* beginning in 1987 . . . ," the corporation was deemed to have made such an election for California purposes. (Italics added; see also § 23801, subd. (a)(2), (3), & (4).)

These statutes do not appear to be ambiguous. They uniformly point to one conclusion—that once the "S corporation" election was first made in 1987, the application of the favorable franchise tax rate commenced in the 1987 *income year*, with 1988 being the first *taxable* year in which the reduced "S corporation" franchise tax rate would apply. There is no provision in the code which allows a corporation electing "S corporation" status in 1987 to apply the reduced franchise tax rate to the 1986 income year.

According to Handlery, these sections are inapplicable since they were promulgated many years ago to address a unique problem—transitioning ongoing businesses after adoption of "S corporation" legislation. As Handlery argues "Neither § 23800, nor any other statute to which the [Board] can point, provides that § 23800's use of 'income year[,'] whatever the intent as to 1987, was also intended to preclude 1991 or any other particular year after 1987 from being both an S corporation 'income' year and a 'taxable' year." (Italics in original.)

We do not, however, so narrowly interpret the legislative framework as set out in section 23800 and related statutes. The obvious purpose for section 23801 was to outline a plan for computing the tax liability of continuing enterprises which, because of the availability of "S corporation" status, were suddenly permitted to take advantage of a more favorable franchise tax rate. This statute establishes that the "S corporation" rate should be initiated in the first income year *after* valid "S corporation" election. This is the precise issue in this case.

In any event, the use of the "income year" as the benchmark for favorable "S corporation" tax treatment appears not only in the enacting legislation but is carried through to the present statutory scheme. In 1990, legislation was enacted amending section 23801. (Stats. 1990, ch. 1348, § 33, pp. 5849-5853.) One of the amended provisions governed notice of the filing or revocation of "S corporation" status. In relevant part, that legislation provided, "For *income years* beginning on or after January 1, 1990, if a corporation, which has in effect a valid 'S' election under . . . the Internal Revenue Code, fails to make a 'C corporation' election . . . , the corporation shall be treated as an 'S corporation' pursuant to [the Code]." (*Id.* at p.

5853, italics added; § 23801, subd. (g).) Once again, the Legislature consistently used the 1990 income year to implement 1990 amendments to section 23801. (See, e.g., § 23801, subds. (a)(4)(A), (a)(4)(C)(i), (a)(4)(D)(ii), (g); see generally, § 23058.)

These provisions notwithstanding, Handlery argues that the controlling provision can be found in language referenced by the historical and statutory notes accompanying the 1987 "S corporation" legislation. That language appears at section 241 of Statutes 1987, chapter 1139, pages 4037-4038. It refers to the entire 1987 act of which the "S corporation" legislation was only a part, and states: "This act provides for a tax levy within the meaning of Article IV of the Constitution and shall go into immediate effect. However, *unless otherwise specifically provided*, the provisions of this act shall be applied in the computation of taxes for *taxable or income years* beginning on or after January 1, 1987." (*Ibid.*, italics added.)

We cannot subscribe to Handlery's assertion that this oblique reference to "taxable or income years" is consistent with a silent legislative intention to amend other statutes expressly establishing the first income year following "S corporation" election as the year in which that reduced franchise tax rate is applied to prepay the franchise tax for the succeeding taxable year. That section is neither expressly concerned with nor refers to "S corporations" or the franchise tax rate. Instead, it applies generally to the 1987 act, which includes provisions applying to taxes, other than franchise taxes, which have no "income year" as an accounting period. (See, e.g., Stats. 1987, ch. 1139, § 3, p. 3963 [personal income tax of "S corporation" shareholders]; *id.,* § 18, p. 3968 [tax on limited partnerships].) Consequently, we find the reference to "taxable or income years" merely reflects that the object of the 1987 legislation involves taxes other than franchise taxes; and this court refuses to add to or alter the "S corporation" legislation to accomplish a purported legislative purpose that does not appear on the face of the "S corporation" legislation. Such a leap in statutory construction must be much more firmly grounded in a clearly articulated legislative purpose than can be discerned here.

Handlery also urges us to consider a number of published decisions which assertedly stand for the proposition that California courts have long recognized "that the franchise tax rate applicable to the calculation of the tax is the rate in effect in the corporation's 'taxable year' rather than its 'income year' . . . ." (See, e.g., *Fullerton Oil Co. v. Johnson* (1934) 2 Cal.2d 162, 176-177 [39 P.2d 796]; *Title Ins., supra,* 145 Cal.App.2d at p. 64.) None of

the cases cited by Handlery specifically addresses the statutory provisions pertinent to this case. Instead, they supposedly advance persuasive common sense arguments in favor of Handlery's position in this matter. If strict enforcement of the express words of the Code was overridden on the basis of such authority, neither taxpayers nor tax officials could rely on the written word of the Code for guidance; and the already difficult task of interpreting the detailed rules prescribed for the assessment and collection of taxes would become impossible. Thus, the Legislature's repeated use of the next "income year" to initiate application of the "S corporation" provisions must prevail over any general theory which would include the "taxable year" in the measure.

In any event, we perceive the Legislature had a sound practical basis for selecting the first income year after the year in which "S corporation" election is made for favorable tax treatment. If Handlery's construction were adopted and it were allowed to apply the lower franchise tax rate to its 1990 income year, the resulting computation could well result in a tax windfall to Handlery and its shareholders. As explained by the Attorney General and conceded at oral argument by Handlery, the 1990 corporate income at issue in this case was not "passed through" to Handlery's shareholders to be reported on their personal tax returns precisely because in 1990 Handlery had not yet invoked its election to become a valid "S corporation." Consequently, Handlery is attempting to apply the more favorable "S corporation" franchise tax rate to 1990 corporate income that was never taxed at the shareholder level.

At oral argument, Handlery countered with the assertion that no windfall would result because, by seeking a refund of a portion of the 1991 franchise tax it prepaid in 1990, this tax savings would ultimately be passed through to its stockholders in the form of additional corporate income during the 1991 income year; and that if such refund is not paid, it gets no financial benefit from its 1991 "S corporation" election until taxable year 1992. First, whether a windfall would, thus, be averted is speculative. The record does not reflect that the officers and directors of Handlery have abandoned the right to exercise their discretion, by using all or a portion of such refund for corporate purposes other than a refund to stockholders. Second, adherence to this logic would improperly confer a double benefit on a taxpayer from its subchapter S election. First, Handlery would have the immediate financial benefit of its 1991 "S corporation" status in reducing its franchise tax payments for 1992 (prepaid in 1991) from the "C corporation" to the "S corporation" rate, thereby substantially reducing its cash outflow in 1991. In addition, Handlery would recover, as a further financial benefit, a substantial

portion of its 1991 franchise tax paid in 1990 before "S corporation" status was achieved.

We detect no legislative intent to permit the refund Handlery seeks.

III. DISPOSITION

The judgment is affirmed.

King, J., and Haning, J., concurred.