Filed 1/19/22  Marriage of Leininger CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re the Marriage of CAROL and PAUL LEININGER.<br><br>CAROL LEININGER,<br><br>　　　Appellant,<br><br>v.<br><br>PAUL LEININGER,<br><br>　　　Respondent. | A159386<br><br>(San Mateo County Super. Ct. No. FAM0119724) |

In this marital dissolution action, Carol Leininger appeals from a judgment in which the trial court awarded Paul Leininger reimbursement (Fam. Code,[1] section 2640) for his separate property contributions to the community. Carol[2] disputes the *Watts*[3] charges the court imposed for her exclusive use of the community residence following the parties' separation. She also appeals the court's finding she breached her fiduciary duty and the attendant award to Paul. Finally, she claims the trial court did not rule, and should have granted her request pursuant to a December 2015 order, that

---

[1] All further undesignated statutory references are to the Family Code.

[2] For clarity, we refer to the parties by their first names. (*In re Marriage of Vaughn* (2018) 29 Cal.App.5th 451, 453, fn. 1.)

[3] *In re Marriage of Watts* (1985) 171 Cal.App.3d 366 (*Watts*).

1

Paul's business pay Carol amounts equal to distributions made to Paul. We affirm.

## BACKGROUND

### A. *The Marriage and Relevant Community Assets*

The parties married in July 1992. Prior to the marriage, Paul started a business known as Challenge Electronics in 1980, which later became known as Absolute Technology. Four years after the marriage, Paul incorporated the business as a subchapter S corporation known as ABX Engineering, Inc. (ABX).

In 1997, to accommodate ABX's need for office space, the parties bought 880 Hinckley Road, Burlingame (880 Hinckley Road). To address ABX's continued expansion, in 2003 the parties purchased 839 Hinckley Road, Burlingame (839 Hinckley Road) and, in 2010, 875 Stanton Road, Burlingame (875 Stanton Road). They also owned income-producing residential property (rental property) and unimproved land.

They lived in the community residence at 405 Chapin Lane, Hillsborough (community residence or Chapin Lane) until August 2013, when Paul moved out. Carol lived there until its sale in November 2018.

### B. *Dissolution Proceedings*

Carol and Paul separated in November 2012. Following separation and prior to the 2019 trial, the parties reached several stipulations. By court order dated August 5, 2013 (August 2013 order), the parties stipulated that Carol, who was a certified public accountant, would manage the parties' miscellaneous income, including rents, and payments of any kind (excluding Paul's ABX salary). They anticipated that any balance above the requisite reserves would be divided equally between the parties and that "each party" would receive "$20,000 per month in passive income."

2

The August 2013 order required Carol to open a community bank account and to deposit rental income from the community's properties into that account, with monthly accountings provided to Paul. Carol opened the community account, but—without Paul's approval—she deposited a substantial portion of the community rental income into an account in her name alone (personal account). Without Paul's consent, Carol used community rental income for personal, postseparation purposes at Chapin Lane, including the mortgage, taxes, maintenance, gardening, and pool expenses. After separation, Carol deposited over $1.6 million into her personal account.

By order dated December 4, 2015 (December 2015 order), the parties stipulated that, as of June 2015, if Paul received distributions from ABX above his base salary, Carol would receive a matching amount.

In October 2018, the parties negotiated an equitable apportionment of the community and separate interests in ABX. Pursuant to the October 26, 2018 stipulated order (October 2018 order), ABX was confirmed as Paul's separate property, for which he paid Carol $875,000 for her share of the community's interest in ABX.

In 2019, the court conducted a 14-day bench trial on the remaining issues of support, reimbursement, property division, and property misappropriation.

## C.   *Trial Court Ruling*

The trial court issued a tentative decision and proposed statement of decision on May 7, 2019 (proposed SOD). The proposed SOD determined Paul's reimbursements for his separate property contributions to community assets, the rent Carol owed for living in the community residence after

3

separation, and Paul's entitlement to damages for Carol's breach of fiduciary duty.

The trial court considered Carol's objections to the proposed SOD and the parties' arguments at the October 31, 2019, hearing and issued its statement of decision, which, among other things, awarded Paul more than $4 million for his separate property contributions to various community assets; $252,541 for Carol's use of the community residence; and damages for Carol's breach of fiduciary duty of $726,450.

Carol appealed, disputing $2,298,000 of the separate property reimbursements, $36,400 of the breach of fiduciary duty damages and the *Watts* charges imposed against her. She also claims the trial court erred in failing to rule on Paul's purported noncompliance with the December 2015 order requiring that Carol receive distributions from ABX equal to those paid to Paul. We discuss in greater detail below additional facts as they relate to the issues raised on appeal.

## DISCUSSION

### I. Separate Property Reimbursements

Carol claims the trial court erred as a matter of law by reimbursing Paul under section 2640 for distributions that were made by ABX for the benefit of the community. She further claims, for the first time on appeal, that contributions made after separation and expenses for maintenance and repair that did not increase the value of the commercial properties are not reimbursable under section 2640, and that the court erred in failing to calculate the community and separate property components of ABX's contributions to the community property.

4

## A.    Additional Facts

The evidence established, and in the statement of decision the trial court found, "[t]here is no dispute that ABX is a subchapter S Corporation of which Paul was, and continues to be, the sole shareholder," and ABX has been confirmed as Paul's "sole and separate property."

From 1998 through 2018, ABX made substantial contributions to improve the community's three commercial properties: more than $608,000 for 880 Hinckley Road; $345,000 for 839 Hinckley Road; and approximately $1,345,000 at 875 Stanton Road.

Carol's expert opined that the improvements had been "capitalized" for tax purposes by ABX, that ABX owned the improvements and therefore the community derived no benefit from them. In objecting to the proposed SOD, Carol obliquely argued, "Can a tenant claim 2640 reimbursement from the owners? . . . [¶] . . . [¶] The separate property company capitalized the expenses, in what way is that a benefit to the community."

In its statement of decision, the trial court found the testimony of Carol's expert "was clearly contradicted by the facts that not only did the parties take the tax benefits for improvements to the commercial properties on their 2012 and 2013 joint income tax returns, but Carol also continued to take such benefits on her personal tax returns after separation."

## B.    Applicable Law

Section 2640 provides in part: "In the division of the community estate under this division, unless a party has made a written waiver of the right to reimbursement or has signed a writing that has the effect of a waiver, the party shall be reimbursed for the party's contributions to the acquisition of property of the community property estate to the extent the party traces the contributions to a separate property source." (§ 2640, subd. (b).)

5

" 'Contributions to the acquisition of property' . . . include downpayments . . . [and] payments for improvements . . . ." (§ 2640, subd. (a).)

" 'Under Section 2640, in case of dissolution of the marriage, a party making a separate property contribution to the acquisition of the property is not presumed to have made a gift, unless it is shown that the parties agreed in writing that it was a gift, but is entitled to reimbursement for the separate property contribution at dissolution of marriage. The separate property contribution is measured by the value of the contribution at the time the contribution is made.' " (*In re Marriage of Bonvino* (2015) 241 Cal.App.4th 1411, 1432, quoting Cal. Law Revision Com. com., 29D West's Ann. Fam. Code (1994 ed.) foll. § 2640, pp. 136–137.)

We review de novo whether the undisputed evidence of ABX's contributions to the community's three commercial properties satisfies section 2640 and conclude that it does. (*Valentino v. Franchise Tax Bd.* (2001) 87 Cal.App.4th 1284, 1290, fn. 3; *Heller v. Franchise Tax Bd.* (1994) 21 Cal.App.4th 1730, 1735.) In matters of statutory interpretation, we begin with the statute's language, giving it plain and commonsense meaning. (*Hassell v. Bird* (2018) 5 Cal.5th 522, 540; see *In re Marriage of Walrath* (1998) 17 Cal.4th 907, 917 (*Walrath*).) "[O]ur ' " 'fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose.' " [Citation.]' . . . 'We construe statutory language in the context of the statutory framework, seeking to discern the statute's underlying purpose and to harmonize its different components.' " (*First Student Cases* (2018) 5 Cal.5th 1026, 1034–1035; see *Webb v. City of Riverside* (2018) 23 Cal.App.5th 244, 252.) Where the statutory language is clear and a literal interpretation does not result in unintended or absurd consequences, courts must generally follow its plain meaning. (*Hassell v. Bird*, at p. 540.)

We presume the correctness of the judgment or order below. (*People v. JTH Tax, Inc.* (2013) 212 Cal.App.4th 1219, 1259.) " 'All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Lister v. Bowen* (2013) 215 Cal.App.4th 319, 337.)

## C.    *Analysis*

Several of the arguments raised by Carol on appeal regarding Paul's entitlement to reimbursement under section 2640 were not presented to the trial court. "[T]o conserve judicial resources, any errors must be brought to the trial court's attention at the trial level while the error can still be expeditiously corrected." (*In re Marriage of Whealon* (1997) 53 Cal.App.4th 132, 144.) If a party fails to raise a specific objection in the trial court, the challenge is forfeited on appeal and need not be considered by the Court of Appeal. (*In re Marriage of Hinman* (1997) 55 Cal.App.4th 988, 1002.)

We will not consider for the first time on appeal Carol's claims that the court erred by reimbursing Paul for postseparation contributions to community improvements and for maintenance expenses which she contends did not increase the value of the commercial properties, and by not calculating the community and separate property components of ABX's contributions to the community property.

Carol claims the trial court erred in reimbursing Paul "personally" for ABX's contributions to community property. She does not challenge the trial court's finding that ABX's payments benefited the community. Nor does she dispute that ABX was started by Paul prior to their marriage; that he was and is the sole shareholder of ABX; and that ABX is Paul's separate property. Rather, Carol argues that ABX's payments were not within the scope of section 2640 because ABX was not a "party" to the dissolution and, as such, is

not entitled to reimbursement from the community. The underlying premise of Carol's argument is that distributions from ABX—Paul's separate property—do not belong to Paul unless they were paid to him as salary or profits. Relying on a corporation's legal status as a "person," distinct from its stockholders, she claims ABX's payments are not from Paul's "separate property" within the meaning of section 2640. Carol further argues the court "erroneously equated Paul (a party to the dissolution of marriage) with ABX, a non-party corporation."

"An S corporation, like a partnership, does not pay income taxes. [Citations.] Instead, its income and losses are ' "passed through" ' on a pro rata basis to its shareholders, who report those items on their personal tax returns." (*In re Marriage of Morton* (2018) 27 Cal.App.5th 1025, 1032 , fn. 3; see *Valentino v. Franchise Tax Bd.*, *supra*, 87 Cal.App.4th at p.1289; *Heller v. Franchise Tax Bd.*, *supra*, 21 Cal.App.4th at p. 1733 ["A C corporation is a separate entity which pays corporate income taxes 'according to or measured by its net income.' [Citation.] [¶] In contrast, an S corporation generally does not pay income taxes as an entity. [Citation.] Rather, the S corporation files only an informational return reporting for the taxable year its gross income (or loss) and deductions, its shareholders, and the shareholders' pro rata shares of each item. [Citation.] The items are then 'passed through' on a pro rata basis to the shareholders, who report them on their personal income tax returns. [Citations.] 'The S corporation is, in effect, a Code-created hybrid combining traits of both corporations and partnerships.' "].) S corporation shareholders are taxed on their share of the S corporation's income regardless of whether the corporation makes any distributions. (See *Heller*, at p. 1734.)

Funds withdrawn from accounts of ABX—Paul's separate property S-corporation's accounts (*Valentino v. Franchise Tax Bd.*, *supra*,

87 Cal.App.4th at pp. 1288–1289)—were likewise Paul's separate property. (*Id.* at p. 1288.) Paul's use of ABX funds—regardless of whether they were paid, loaned, or otherwise distributed to him—entitled him to reimbursement under section 2640 because he is indisputably a "party" who made contributions from a "separate property source" (his ABX income) to community assets.

Carol's reliance on *In re Marriage of Koester* (1999) 73 Cal.App.4th 1032 is entirely misplaced; that case involved transmutation of a husband's separate property company. There, husband owned a sole proprietorship before marriage that he later incorporated during the marriage. (*Id.* at p. 1035.) The trial court determined husband's separate property company became community property when it was incorporated, and then awarded husband section 2640 reimbursement for what he had contributed to starting the company. (*In re Marriage of Koester*, at pp. 1035–1036.) Reversing, the Court of Appeal held that mere incorporation during marriage did not transform husband's separate property to community property. (*Id.* at p. 1037.) The court further held that section 2640 did not apply to contributions made to "separate property businesses and is inherently not applicable to businesses, at least where there is no compliance with the rigorous requirements for transmutation set forth in section 852 (requiring transmutations be made by express written declaration)." (*In re Marriage of Koester*, at p. 1036.) The general principle that section 2640 is not applicable to businesses absent evidence of transmutation is unhelpful, particularly where it is undisputed, as here, transmutation is not at issue. Also, *Koester* involved reimbursement for contributions made *to* a separate property business—not contributions *from* a separate property business to the community.

9

We reject Carol's cursory claim that "Reason, Common Sense, and the History of the Legislation" establish that Paul was not entitled to reimbursement. As the California Supreme Court explained in *Walrath, supra,* 17 Cal.4th 907, "[t]he effect of section 2640 was 'to overturn a long line of cases which had held that absent an agreement to the contrary, separate property contributions to the community were deemed to be gifts to the community.' (*In re Marriage of Perkal* (1988) 203 Cal.App.3d 1198, 1201; see *In re Marriage of Fabian* [(1986) 41 Cal.3d 440,] 449–450 [Legislative history of former Civil Code section 4800.2 reveals a 'legislative judgment that it would be fairer to the contributing party to allow separate property reimbursement upon dissolution.'].)" (*Walrath, supra,* at p. 918.) Consistent with this purpose, section 2640 "encourages married persons to freely and without reservation contribute their separate property assets to benefit the community, and alleviates the need for spouses to negotiate with each other during marriage regarding continuing reimbursement rights. Under this interpretation, section 2640 protects the general expectations of most people in marriage, i.e., that spouses will be reimbursed for significant monetary contributions to the community should the community dissolve." (*Walrath*, at p. 919.)

The clear legislative intent of section 2640 and the subsequent jurisprudence belie Carol's argument that a spouse be denied reimbursement because funds were paid *directly* to the community and not first withdrawn, deposited into a separate account, and then paid to the community. Carol's "interpretation . . . would lead to absurd consequences" (*Walrath, supra,* 17 Cal.4th at p. 918), and we reject it.

## II. *Watts* Charges

Carol claims the trial court erred in assessing *Watts* charges against her for her exclusive use of the community residence after separation since she maintained the home and paid the mortgage and for imposing them as "sanctions" for her breach of fiduciary duty.

### A.    *Additional Facts*

Carol had exclusive use and possession of the community residence at Chapin Lane from August 2013 until it was sold in November 2018. Carol's expert calculated the rental value to be $539,400, with Carol's portion being $245,141. Carol's expert took into account the "rough" condition of the community residence in his appraisal of the property. Paul did not dispute the rental value, but argued Carol should be charged with an additional $7,400 representing the rent for August of 2013, the month Paul permanently moved from the community residence. The court accepted Carol's calculation of her share but added the $7,400 for a total of $252,541.

Carol objected, asked the court to cut the *Watts* charges in half based on the purported defective condition of the property, and argued she was being "double-charged" because she paid $549,154 for the mortgage. Evidence at trial established that Carol paid the mortgage, but with income she collected from community property rents and, contrary to the order, did not distribute to Paul. Because Carol's expert calculated the property's fair market value based on its condition, the court rejected her claim for an offset.

Acknowledging that *Watts* charges are discretionary, in light of Carol's conduct—including her knowledge that Paul purchased his residence in July 2013 with a monthly mortgage obligation of approximately $12,000 in anticipation of receiving $20,000 per month of community passive income— the court decided that equity required charging Carol $252,541.

11

## B. Applicable Law

" 'Where one spouse has the exclusive use of a community asset during the period between separation and trial, that spouse may be required to compensate the community for the reasonable value of that use.' [Citation.] The right to such compensation is commonly known as a '*Watts* charge.' [Citation.] Where the *Watts* rule applies, the court is 'obligated either to order reimbursement to the community or to offer an explanation for not doing so.' " (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 978.) "The trial court determines what is due the community 'after taking into account all the circumstances' relevant to the exclusive possession by one spouse." (*Id.* at p. 979.)

The trial court has broad discretion, based on equitable considerations, as to whether to impose *Watts* charges and in what amount. (See *In re Marriage of Oliverez* (2019) 33 Cal.App.5th 298, 318 [*Epstein* credits]; *In re Marriage of Dellaria & Blickman-Dellaria* (2009) 172 Cal.App.4th 196, 201 [review of orders dividing marital property].)

## C. Analysis

Carol contends the court abused its discretion by imposing the full amount of *Watts* charges. In reaching its decision, the court considered all the circumstances: Paul incurred a monthly mortgage obligation of $12,000 based on the expectation that he would receive $20,000 per month from the community's passive income; during the relevant time period Paul received only $40,215 from the passive income while Carol used $839,712 of community rental income to pay for her exclusive use of the community residence; and the fair market value of the community residence was based on its condition as calculated by Carol's expert.

The trial court exercised its discretion and ordered equitable reimbursements to Paul for Carol's exclusive use of the community property. (See *In re Marriage of Boswell* (2014) 225 Cal.App.4th 1172, 1174 [family law courts are courts of equity].) We find no error.

### III. Breach of Fiduciary Duties

Carol contends the trial court erred in finding she breached fiduciary duties by mismanaging the community's rental property. She argues that exercise of her business judgment, even if improvident, does not establish a breach of fiduciary duty.

### A.    *Additional Facts*

The fair market monthly rental value of the community's Los Altos property was between $6,500 and $7,100, but Carol charged the tenants $5,500 per month. It is undisputed that Paul made written and oral demands that Carol increase the rent to its fair market value. Despite Paul's demands, Carol never increased the rent at the Los Altos property. The court rejected Carol's explanation that she had valid business reasons for not increasing the rent: good tenants, needed repairs, and the short term until the sale of the property. The court found Carol's mismanagement breached her fiduciary duty and awarded Paul the difference between the estimated fair market rental value ($6,900) and the rent charged ($5,550): $1,400 per month for 26 months,[4] for a total of $36,400.

### B.    *Applicable Law*

"[I]n transactions between themselves, spouses are subject to the general rules governing fiduciary relationships that control the actions of

---

[4] The time period is from October 1, 2016—when Paul moved to have Carol removed as the manager of the rentals—through and including December 2018.

13

persons occupying confidential relations with each other. This confidential relationship imposes a duty of the highest good faith and fair dealing on each spouse, and neither shall take any unfair advantage of the other. This confidential relationship is a fiduciary relationship subject to the same rights and duties of nonmarital business partners, as provided in Sections 16403, 16404, and 16503 of the Corporations Code . . . ." (§ 721, subd. (b).)

Spouses, however, are not subject to the "Prudent Investor Rule" (which applies to trustees with regard to trust property) in managing and investing community property. (§ 721, subd. (b) [excepting Prob. Code, § 16047 from interspousal fiduciary duties]; see *In re Marriage of Kamgar* (2017) 18 Cal.App.5th 136, 149.) Even so, pursuant to section 721, subdivision (b) "a spouse's *improvident C[ommunity] P[roperty] investments* can amount to a breach of fiduciary duty if they rise to the level of '*grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law*' ([Corp. Code, § 16404, [subd.] (c)." (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group (2021) ¶ 8:606, p. 8-222, original italics.) "On the other hand, a spouse's 'bad business judgment' in making C[ommunity] P[roperty] investments, to the extent it amounts only to *ordinary negligence*, is not a breach of fiduciary duty; and the managing spouse, in such circumstances, cannot be held responsible to the other spouse for an investment that (by hindsight) has gone bad." (*Ibid*.)

A spouse's breach of fiduciary duty may result in sanctions under the Family Code even without a showing of impairment resulting from the breach. (See §§ 2107, subd. (c) [referring to sanctions imposed to "deter repetition" of conduct that "fails to comply" with the disclosure requirements]; 271 [authorizing sanctions to effectuate the policy of promoting settlement of litigation and cooperation of litigants].)

14

Sanctions may be appropriate to effectuate "the goal of reducing the adversarial nature of marital dissolution rather than at redressing any *actual harm* inflicted on the complaining spouse." (*In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1480.) Nonetheless, a trial court need not impose sanctions if it finds "that the noncomplying party acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (§ 2107, subd. (c).)

Sanctions orders are reviewed for an abuse of discretion. (*In re Marriage of Feldman, supra,* 153 Cal.App.4th at p. 1478.) "Accordingly, we will overturn such an order only if, considering all of the evidence viewed most favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order." (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1225–1226.) "We review any findings of fact that formed the basis for the award of sanctions under a substantial evidence standard of review." (*Feldman,* at p. 1479.)

## C.   *Analysis*

Substantial evidence supports the trial court's determination that Carol undercharged the rent for the Los Altos property by $1,400. Whether Carol's conduct rose to the level of "grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law'" (Corp. Code, § 16404, subd. (c)) is a question of fact, depending on the nature of the act and the surrounding circumstances. (See, e.g., *Jimenez v. 24 Hour Fitness USA, Inc.* (2015) 237 Cal.App.4th 546, 555.) Given the deferential standard of review, even if we may have reached a different conclusion, we cannot say on this record that no judge could have reasonably determined Carol's conduct constituted a breach of fiduciary duty, and find no error.

## IV. Matching Distribution

Carol's final argument is that the trial court erred in failing to rule on her claim that Paul breached the December 2015 order requiring him to make matching distributions to her for any draws he took from ABX. Paul responds that Carol waived this issue by failing to request findings on this issue, and, in any event, relinquished any claim when she stipulated, and the court ordered, that ABX was Paul's separate property.

### A.    *Additional Facts*

The December 2015 order provided, in part, as follows: "Other than the base salary stated in the existing child support order, Husband will not make any payment out of ABX or loan or distribution or pay any divorce expense or increase over current levels, whether business, entertainment, or credit card expense or do anything of any nature that the mind of mankind can conceive to take more than his base pay out of ABX, however labeled, unless he gives an identical amount to Wife or obtains a prior court order: The intent is if Husband were to take any distributions from ABX, other than his existing base salary as of June, 2015, Wife would get a comparable distribution unless the distribution is by agreement of the parties or by court order."

The October 2018 order required Paul to pay Carol $875,000 and in exchange Carol "relinquishe[d] any claim of entitlement, whether community, separate or otherwise, to the business known as ABX Engineering, including all accounts receivable & payable, cash, inventory, & intangible value . . . ."

In response to the proposed SOD, Carol objected that the trial court did not address her claim that Paul failed to comply with the December 2015 order that he pay her an amount equal to what he received from ABX. Carol listed numerous distributions Paul made between 2015 and 2018, the sum of which was in excess of $670,000.

16

At the October 31, 2019, hearing on Carol's objections, the court heard argument from both parties regarding the effect of the December 2015 order. The statement of decision did not address Carol's claim that the December 2015 order entitled her to additional distributions from ABX.

## B.    *Applicable Law*

"[A] trial court is required to render a statement of decision addressing the factual and legal bases for its decision as to each of the principal controverted issues of the case. (Code Civ. Proc., § 632.) A statement of decision need not address all the legal and factual issues raised by the parties. Instead, it need do no more than state the grounds upon which the judgment rests, without necessarily specifying the particular evidence considered by the trial court in reaching its decision." (*Muzquiz v. City of Emeryville* (2000) 79 Cal.App.4th 1106, 1124–1125.) "The court is required only to state the ultimate rather than evidentiary facts." (*In re Marriage of Williamson* (2014) 226 Cal.App.4th 1303, 1318.)

## C.    *Analysis*

Preliminarily, the record belies Paul's claim that Carol failed to raise her claim of noncompliance with the December 2015 order at trial. But we agree that she did not raise it timely and therefore conclude the trial court did not err by omitting it from the statement of decision. The time for raising this issue had long since passed when Carol objected to the proposed SOD. Carol should have made that claim before she stipulated in October 2018 to the terms of Paul's buyout of her interest in ABX and the court confirmed ABX as Paul's separate property. She did not. The trial court was not required to address this untimely and otherwise forfeited claim and we reject it.

17

**DISPOSITION**

The judgment is affirmed.

_____
Ross, J.*

WE CONCUR:

_____
Streeter, Acting P.J.

_____
Brown, J.

*A159386 In re Marriage of Leininger*

---

\* Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.